Shelly SANDERS *v.* STATE of Arkansas

CR 92-1085                                      839 S.W.2d 518

Supreme Court of Arkansas
Opinion delivered October 19, 1992

*John Joplin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Cathy Hodges*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Shelly Sanders, who is deaf, made a pretrial motion to suppress statements given to law enforcement officers on March 4, 1989, on the ground that the statements were obtained in violation of Ark. Code Ann. § 16-89-105(c) (Supp. 1991). The trial court overruled the motion to suppress. Appellant entered a conditional plea of guilty to the offense of driving while intoxicated pursuant to Ark. R. Crim. P. 24.3(b), which allows a defendant to "enter a conditional plea of guilty . . . , reserving in writing the right, on appeal from the judgment, to review of an adverse determination of a pretrial motion to suppress evidence" and to withdraw his plea if he prevails on appeal. This appeal followed.

Appellant originally appealed to the Court of Appeals, which transferred the case to us as presenting an issue of statutory construction. Rule 29(1)(c). Since this appeal requires our interpretation of section 16-89-105(c), our jurisdiction is proper pursuant to Rule 29(1)(c).

On March 4, 1989, appellant was at the scene of an accident involving a car which left the roadway and struck a house. Officer Kirk Redwine arrived to investigate the accident. Appellant and another individual, Mr. Holmes, were present as was Mr. Mobley, the owner of the house. At the suppression hearing, Officer Redwine testified when he arrived at the scene Mr. Mobley asked him to come in the house for a minute, which he did. Mr. Mobley told Officer Redwine the car hit the house and when he went outside to see what had happened Mr. Holmes had been trying to move the car back onto the street. Officer Redwine testified that this caused him to believe that Mr. Holmes had been driving the car. Mr. Mobley also told Officer Redwine Mr. Holmes was deaf. Officer Redwine then went outside and was trying to talk to Mr. Holmes when Ms. Sanders got Officer Redwine's attention by touching him on the shoulder. Ms. Sanders proceeded to tell Officer Redwine that both she and Mr. Holmes were deaf and indicated she had been driving the car. It was at this time Officer Redwine smelled the odor of intoxicants on appellant's breath. Officer Redwine further testified that he and Ms. Sanders communicated both by trying to speak and by writing notes. From these communications, Officer Redwine determined Ms. Sanders had been driving and had been trying to talk to Mr. Holmes when she lost control of the car. Officer

Redwine informed Ms. Sanders that she was going to be taken to the police station and given a breath test. Ms. Sanders was taken to the police station, she was given a copy of the police department form detailing her rights and allowed to read it. She indicated she understood the form and would take the breath test. Ms. Sanders then signed the rights form. Ms. Sanders took the breath test and registered .11.

Appellant argues all the statements given to Officer Redwine were taken in violation of section 16-89-105(c) and, therefore, are not admissible. Section 16-89-105(c) provides:

> In the event a person who is deaf is arrested and taken into custody for any alleged violation of a criminal law of this state, the arresting officer and his superiors shall procure a qualified interpreter in order to properly interrogate the deaf person and to interpret the person's statement. No statement taken from the deaf person before an interpreter is present may be admissible in court.

We have not previously interpreted this statute. It is appellant's contention the last sentence "[n]o statement taken from the deaf person before an interpreter is present may be admissible in court" precludes the use of *any* statement by a deaf person taken by the police without an interpreter present. Appellant's construction of the statute is overly broad.

■■ Appellant is asking us to read something into this statute that is not there. The basic rule of statutory construction is to give effect to the intent of the legislature, making use of common sense. *State* v. *Joshua*, 307 Ark. 79, 818 S.W.2d 249 (1991). Section (c) of the statute must be read as a whole. When read as a whole, it is clear the last sentence refers to the first and the intent is to preclude statements made by a deaf person *after* arrest and while in custody for any alleged violation of a criminal law of the State of Arkansas without the assistance of an interpreter. A deaf person is not entitled to an interpreter under the statute until after he is arrested and taken into custody. Common sense indicates the reference to an interpreter in the last sentence of section (c) is referring to the first sentence and, therefore, the last sentence applies only when the deaf person has become entitled to an interpreter pursuant to the first sentence. For statements made prior to arrest and being taken into custody,

the legislature apparently intended the trier of fact to determine the accuracy of the officer's interpretation of the deaf person's communications.

■ Appellant has not at any time alleged she was arrested and in custody for an alleged violation of a criminal law of the State of Arkansas when the statements at issue were made by her. Therefore, the trial judge was correct in ruling the statements were admissible.

Affirmed.