## The SEBASTIAN COUNTY CHAPTER OF THE AMERICAN
## RED CROSS *v.* Wanda WEATHERFORD

92-403                                      846 S.W.2d 641

Supreme Court of Arkansas
Opinion delivered February 1, 1993

*Hardin, Jesson, Dawson & Terry*, by: *Rex M. Terry*, for appellant.

*Oscar Stilley*, for appellee.

ROBERT L. BROWN, Justice. This case concerns the Freedom of Information Act, and the appeal presents a single issue for consideration: whether a ground lease between the City of Fort Smith and the appellant, the Sebastian County Chapter of the American Red Cross, wherein the City charges Red Cross a one-

dollar-per-year lease payment, qualifies as support by public funds. The circuit court found that it did. We hold that the finding was clearly erroneous, and we reverse and remand.

At the meeting of the Fort Smith Board of Directors on December 6, 1983, a resolution was adopted authorizing a lease agreement between the City and the Red Cross. The agreement provided that the City would lease a lot to the Red Cross for a period of thirty years with an annual rental fee of one dollar. It further provided that the Red Cross would commence construction of a building for its offices and that the building would revert to the City upon the expiration of the lease.

On January 8, 1992, the appellee, Wanda Weatherford, directed a request to the Red Cross, seeking an opportunity to "inspect and copy all non-privileged documents" in its possession. The Red Cross denied the request, and Weatherford filed a petition for disclosure under the Arkansas Freedom of Information Act on the basis that the lease constituted public funding. She also contended that the American Red Cross received federal funding, but no proof of that fact was presented to the circuit court.

The Red Cross answered and asserted that the building was constructed on the leased property at its own expense and that at the expiration of the lease term the building and improvements would become the property of the City. The Red Cross also emphasized that it was not a public agency or an organization "wholly or partially supported by public funds or expending public funds" within the meaning of Ark. Code Ann. § 25-19-103 (Repl. 1992). Further, the Red Cross contended that Weatherford was using the FOIA as a replacement for discovery related to a civil action it had pending against certain Red Cross officials.

At a subsequent hearing, the parties stipulated that, standing alone, $1.00 per year would be less than a reasonable rental value for the leased property. Also at the hearing, reference to a 1979 appraisal was introduced establishing the value of three lots, one-half of which constitutes the leased land in question, at $62,500. Counsel for Red Cross argued that the lease was an

arms-length transaction[1] in that the City would ultimately gain the constructed Red Cross building valued at $60,000 in 1983 and the public had the use of the conference room in the building. He also argued that the one-dollar-per-year rental payment did not qualify as support by public funds. Following the hearing, the circuit court entered an order in which it first recognized that the lease required the Red Cross to build a building and that the public might obtain substantial benefit from the lease. The court then found that the fair market value of the leased property was "substantially more than $1 per year" and that the lease constituted a partial support by public funds, or an expenditure of public funds under § 25-19-103. Accordingly, the court ordered the Red Cross to open its non-exempt records for inspection pursuant to the FOIA.

The Arkansas Freedom of Information Act, Ark. Code Ann. § 25-19-101 — 25-19-107 (Repl. 1992), was originally enacted as Act 93 of 1967. The legislative intent behind the FOIA is stated at Ark. Code Ann. § 25-19-102 (Repl. 1992):

> It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this chapter is adopted, making it possible for them, or their representatives to learn and to report fully the activities of their public officials.

We have stated repeatedly that the FOIA should be liberally construed in order to accomplish the Act's laudable purposes. *See, e.g., Bryant* v. *Mars,* 309 Ark. 480, 830 S.W.2d 869 (1992); *City of Fayetteville* v. *Edmark,* 304 Ark. 179, 801 S.W.2d 275 (1990); *North Central Assoc. of Colleges & Schools* v. *Troutt Bros. Inc.,* 261 Ark. 379, 548 S.W.2d 825 (1977); *Laman* v. *McCord,* 245 Ark. 401, 432 S.W.2d 753 (1968). We have also remarked that we are aware of the need for a balancing of interests to give effect to the intent of the General Assembly,

---

[1] At oral argument before this court, counsel for Red Cross also acknowledged that the Red Cross was receiving what amounted to an indirect benefit from the City by virtue of the one-dollar-per-year lease payment.

and we do so with a common sense approach. *Bryant* v. *Mars, supra; Simmons First Nat'l Bank* v. *Liberty Mut. Ins. Co.*, 282 Ark. 194, 667 S.W.2d 648 (1984).

█ The FOIA opens to inspection and copying "all public records." Ark. Code Ann. § 25-19-105(a) (Repl. 1992). As defined by Ark. Code Ann. § 25-19-103(1) (Repl. 1992), "public records" means writings and other documentation "required by law to be kept or otherwise kept, and which constitute a record of the performance of lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, *or any other agency wholly or partially supported by public funds or expending public funds*." (Emphasis supplied.)

The issue in this appeal has been narrowly drawn by the parties and the circuit court, that is, what constitutes support by public funds? We focus first on the term "public funds," which is not defined in the FOIA. The definition given in *Black's Law Dictionary*, 6th ed. (1990), is "Moneys belonging to government, or any department of it, in hands of public official." Case law cited by *Black's* in support of this definition is relevant to the present case. *See Droste* v. *Kerner*, 217 N.E.2d 73 (Ill. 1966). In *Droste*, a taxpayer attacked the Illinois legislature's conveyance of land submerged beneath Lake Michigan to U.S. Steel on the basis of a statute that prohibited the "disbursement" of "public funds" and "public moneys" by state officials. The Illinois Supreme Court affirmed the trial court and rejected the taxpayer's attempt to translate 194.6 acres of land into "public funds." The court concluded that "the legislature could not have contemplated real estate when it referred to public funds, nor may this court torture the meaning of the words employed to arrive at that result." 217 N.E.2d at 78-79.

This court has dealt with several instances in which private entities have received public funds, and in those cases we have applied the FOIA. *See City of Fayetteville* v. *Edmark, supra; North Central Ass'n of Colleges & Schools* v. *Troutt Bros, Inc., supra; Rehab. Hospital Services Corp.* v. *Delta-Hills Health Systems, Agency, Inc.*, 285 Ark. 397, 687 S.W.2d 840 (1985). In *City of Fayetteville* v. *Edmark, supra*, outside attorneys were employed and paid by the City for their work. Records in their

possession were held to be subject to FOIA disclosure, in part because they had been hired in lieu of the city attorney and paid with public funds.

An earlier case, *North Central Ass'n of Colleges & Schools v. Troutt Bros, Inc., supra,* involved a suit over the exclusion of a reporter from a state meeting of the North Central Association of Colleges and Schools, an organization that sets educational standards and policies for colleges and secondary schools. Dues from the Arkansas schools supported the NCA. Although the association was a private, nonprofit corporation, a factor stressed by this court in applying the FOIA was that over 90% of the money contributed by Arkansas schools to the NCA was public money.

In still another case, the Delta-Hills Health Systems Agency, Inc. had been created under federal law to assist the Arkansas State Health Planning and Development Agency in the regional review of certain proposed changes in health care. *Rehab Hospital Services Corp. v. Delta-Hills Health Systems Agency, Inc.,* 285 Ark. 397, 400, 687 S.W.2d 840, 842 (1985). The primary source of funding for the Delta-Hills HSA was the federal government, which we held to be public funding. Because of this, we concluded that Delta-Hills HSA, though a private, nonprofit corporation, was subject to the FOIA.

All of these cases dealt with direct public funding of some sort as the catalyst for the application of the FOIA. None of these cases expanded the term "public funds" to embrace an indirect benefit conveyed by government upon a private organization.

In the present case, we are mindful that under the Lease Agreement the City will at some point fall heir to the Red Cross building and, thus, receive the benefit of this improvement and that in the interim the public has use of the Red Cross conference room. However, we do not decide this case on that basis. The plain language of the FOIA confirms that the General Assembly intended that direct public funding be required. As previously noted, the FOIA applies to private entities "supported wholly or in part by public funds." Had the General Assembly intended to extend the FOIA to private organizations that receive any form of government assistance or subsidy, no matter how indirect, it would not have used the words "supported . . . by public funds"

to describe the nature of support necessary to trigger the Act.

■ Refusal to read indirect government benefits or subsidies into the term "public funds" is not at odds with a liberal construction of the FOIA. Were we to construe "public funds" to include an entirely separate and new category of government support, we would be amending the FOIA to expand its application significantly. For example, the Arkansas Code contains statutes designed as incentives to induce businesses to locate in the state. Arguably, the use of such devices for industrial development or other purposes constitutes indirect public support. Did the General Assembly, without saying so, intend the application of the FOIA to all private organizations which receive some government benefit, no matter how minor? We think not.

■ We, therefore, adopt a common sense approach, as we did in *Bryant* v. *Mars, supra*, and give the term "public funds" its plain and ordinary meaning which is best evidenced by *Black's Law Dictionary* and the definition "moneys belonging to government." Here, no payment of government moneys was made to the Red Cross and the concomitant application of the FOIA should not transpire. In deciding as we do, we resist the temptation to legislate judicially. *See Ragland* v. *Yeargan*, 288 Ark. 81, 702 S.W.2d 23 (1986). We do, however, recognize that all records pertaining to the Lease Agreement between the City and the Red Cross were available to Weatherford through an FOIA request to the City.

Reversed and remanded for an order consistent with this opinion.

DUDLEY, J., dissents.

ROBERT H. DUDLEY, Justice. The plaintiff-appellee, Wanda Weatherford, filed a request of the defendant-appellant, Sebastian County Chapter of the American Red Cross, to "inspect and copy all non-privileged documents" in its possession. The request was filed under the authority of the Arkansas Freedom of Information Act. The local chapter denied the request. The plaintiff-appellee field suit in circuit court for the information.

The Arkansas Freedom of Information Act gives a citizen the right of access to public records. Ark. Code Ann. § 25-19-105 (1987). "Public records" are the records of any organization that

is "wholly or *partially supported by public funds.*" Ark. Code Ann. § 25-19-103 (1) (1987) (emphasis added).

The trial court held that the local chapter received a subsidy from the City of Fort Smith, and, since it was partially supported by public funds, the chapter was under an obligation to disclose its non-privileged records. The majority opinion reverses the trial court's ruling and, for all practical purposes, dismisses the request.

In 1983, the City of Fort Smith leased a lot to the Sebastian County Chapter of the American Red Cross for thirty years for one dollar per year. It is undisputed that the fair rental value of the lot is substantially more than one dollar per year. Thus, it is without dispute that the City has been and will continue to *partially support* the local chapter of the Red Cross. The majority opinion holds that the partial support provided by the City is not in the form of *public funds* because it is only an "indirect benefit," and it is not "money."

The subsidy given to the local chapter is not an "indirect benefit." It is direct. Nothing more need be said.

The majority opinion construes the statutory phrase "public funds" to exclude a governmental subsidy by rental value. The majority opinion does so by holding that the phrase "wholly or partially supported by public funds" means wholly or partially supported by "moneys belonging to the government."

Without question, the word "public" is inclusive of government property. The only question is whether the word "funds" includes a subsidy by rental value. The answer to the question is found in our rules of statutory interpretation. The primary goal in the interpretation of statutes is to determine and to give effect to the intent of the General Assembly. *Sanders* v. *State*, 310 Ark. 630, 839 S.W.2d 518 (1992). In determining that intent we give words their usual and ordinary meaning. *Bob Cole Bail Bonds, Inc.* v. *Howard*, 307 Ark. 242, 819 S.W.2d 684 (1991). Finally, we have stated repeatedly that the Freedom of Information Act should be liberally construed in order to accomplish the act's laudable purpose. *See, e.g., Bryant* v. *Mars*, 304 Ark. 179, 801 S.W.2d 275 (1990). An examination of the facts of this case in the light of the above rules of construction reveals the fault in the

majority opinion.

## Legislative Intent

Under the rationale of the majority opinion, if a governmental entity gives a $1,000 bill to another organization, that other organization must disclose its relevant records. However, if the governmental entity gives millions in value to subsidize another organization, that organization does not have to disclose its relevant records. These exempt subsidies might be in the form of goods or labor or services, or in the form of a check or warrant or draft or bond, or in the form of a conveyance or lease of either personal or real property—anything so long as it is not "money." Such a rationale is not at all in keeping with the legislative intent.

## The Usual And Ordinary Meaning of Words

If one were to ask an ordinary person, "Where do you keep your funds?", the answer might be, "In the bank," or it might be, "Partly in stocks, partly in bonds, some real estate, and some cash." Funds in the bank are only a credit. A credit is not money. Having one's funds in stocks and bonds would also be having one's funds in something other than money. "Funds" is the plural of "fund." Fund means a quantity of material resources maintained or available as a source of supply. Websters International Dictionary 920 (3d ed. 1961). On the other hand the word "money" has a more limited definition. Money means a medium of exchange. Websters International Dictionary 1458 (3d ed. 1961); *See also Quinn-Moore* v. *Lambert*, 272 Ark. 324, 614 S.W.2d 230 (1981). The dollar is the monetary unit that constitutes the medium of exchange in the United States. Thus, the majority opinion limits the meaning of the phrase "partially supported by public funds," to partially supported by United States dollars. In short, the majority opinion does not give the word "funds" its usual and ordinary meaning.

## Construction To Accomplish Act's Purpose

In this case the City, over the period of the lease, has given and will give to the local chapter the fair rental value of the lot that exceeds one dollar per year. The amount of this gift is monetarily determinable. It is a subsidy that causes a depletion of the public funds just as certainly as if the subsidy were by dollar

bills. A construction that gives meaning to the laudable purposes of the Act would require disclosure by an organization that is partially supported by public services, or goods, or property, just as surely as it does one supported by public dollars.

Accordingly, I dissent.