The Honorable Steve Bell State Senator 500 East Main, Suite 208 Batesville, Arkansas 72503
Dear Senator Bell:
This is in response to your request for an opinion, on behalf of Mr. Charles R. Barnett, Treasurer of Independence County, regarding the manner in which funds from the White River Hydroelectric Project are being handled. In the correspondence attached to your request, Mr. Barnett sets forth the factual basis for his questions, which I will summarize below.
On December 30, 1985, Independence County issued certain hydroelectric revenue bonds (principal amount totaling $112,500,000) for the purpose of developing hydroelectric generation projects on the White River. These bonds were issued pursuant to a bond trust indenture, dated December 1, 1985, between Independence County and Worthen National Bank of Arkansas. Pending the completion of the White River hydroelectric project, the proceeds of the revenue bonds were deposited in escrow accounts pursuant to the indenture. Subsequently, the Independence County Quorum Court passed a resolution in which the County Judge of Independence County was authorized to make administrative decisions pertaining to the use of the bond proceeds.
On November 1, 1988, in an effort to further the development of the White River hydroelectric project, Independence County remarketed some of the principal amount of the bonds under the terms of the indenture with Worthen Bank. The bonds were subject to mandatory redemption on May 1, 1991, under the terms of the indenture with Worthen if the conditions for disbursement from the escrow accounts were not complied with by that date. Independence County was unable to comply with these conditions, and accordingly, the bonds were redeemed on May 1, 1991, pursuant to the indenture. Following the redemption of the bonds, certain moneys in excess of the amount required to redeem the bonds remained on deposit in the escrow accounts. On June 13, 1991, Independence County Judge David Wyatt issued an "Order" approving a depository trust agreement by and between Independence County and Worthen National Bank. Pursuant to this trust agreement, any amounts remaining in the escrow accounts after redemption of the bonds was to continue to be held by Worthen, and these monies were to be applied solely to the payment of costs of developing hydroelectric facilities in Independence County pursuant to the procedures set forth in the trust agreement. Copies of County Resolution No. 126-86, pages 68 to 94 of the bond trust indenture, and the June 13, 1991, "Order" signed by County Judge Wyatt were submitted to this office with the request for an opinion.[1] With regard to these matters, Mr. Barnett has posed the following questions, which I have restated in part:
 1. After the bond issue was redeemed on May 1, 1991, are the White River hydroelectric project funds "public funds" under Section 48 of Act 742 of 1977, which is codified at A.C.A. § 14-14-1313 (1987)?
 2. After the bond issue was redeemed on May 1, 1991, may the county judge order the funds into trust without payment into the county treasury?
3. Does A.C.A. § 14-73-103 (1987) apply in this case?
 4. Are the White River hydroelectric project funds "county funds" as referred to in Act 668 of 1991, subparagraph (b)(1)(e) of Section 1, which is codified at A.C.A. § 23-32-1003(b)(1)(E) (Cum. Supp. 1993)?
 5. May a designated trustee hold money under the control of any county official or county entity in the mutual funds referred to in the provision cited above in question four?
 6. Does the Independence County Treasurer have any responsibility or liability under Arkansas law and/or the county treasurer's bond for the White River hydroelectric project funds and their "collateralization"?
I will begin by providing a summary of the law under which the revenue bonds for the White River hydroelectric project were issued, after which I will respond to Mr. Barnett's questions in the order posed.
According to the June 13, 1991, "Order" issued by Independence County Judge David Wyatt, the hydroelectric revenue bonds in this case were issued pursuant to Act 17 of the First Extraordinary Session of 1981, which is codified at A.C.A. §§ 14-204-101 to -112 (1987) and which is entitled the "Municipalities and Counties Hydroelectric Power Development Revenue Bond Law." A.C.A. § 14-204-101. This law authorizes municipalities and counties to "own, acquire, construct, reconstruct, extend, equip, improve, operate, maintain, sell, lease, contract concerning, or otherwise deal in or dispose of, or make loans to finance the acquisition, construction . . . of, facilities to constitute all or any part of a hydroelectric power project. . . ." A.C.A. §14-204-104(a). Municipalities and counties are authorized to issue revenue bonds and to use the proceeds thereof for the accomplishment of the purposes set forth in A.C.A. § 14-204-104. A.C.A. § 14-204-105(a). These revenue bonds may be issued upon the adoption of an ordinance by the governing body of a municipality or upon order of a county court. A.C.A. §14-204-106(a)(1). See also Ark. Const. amend. 65, § 1 (stating that "any governmental unit, pursuant to laws heretofore or hereafter adopted by the General Assembly, may issue revenue bonds for the purpose of financing all or a portion of the costs of capital improvements of a public nature. . . .") Such municipal ordinances or orders of the county court may provide for the execution by the municipality or county of an indenture "which defines the rights of the bondholders and provides for the appointment of a trustee, within or without this state, for the bondholders." A.C.A. § 14-204-106(c)(1). The indenture "may control the priority between successive issues and may contain any other items, covenants, and conditions that are deemed desirable, including, without limitation, those pertaining to the custody and application of the proceeds of the bonds. . . ." A.C.A. § 14-204-106(c)(2). The bonds issued under A.C.A. §§14-204-101 to -112 may be subject to such terms of redemption and other conditions as the ordinance of the municipality or order of the county court may provide, "including, without limitation, those pertaining to the custody and application of proceeds of the bonds . . . the maintenance of various funds and reserves, the investment of moneys held thereunder. . . ." A.C.A. §14-204-106(a)(3).
With regard to the first question posed, I assume that Mr. Barnett is inquiring as to whether the proceeds of the revenue bonds remaining in the escrow accounts after redemption of the bonds constitute "public funds" within the meaning of A.C.A. §14-14-1313, which is a section of the Arkansas "County Government Code" and which provides the following:
 All public funds coming into the possession of any officer of the county shall be remitted to the county treasury in a manner prescribed by law. [Emphasis added.]
The term "public funds" has been generally described as "moneys belonging to government, or any department of it, in hands of public official." Sebastian County Chapter of the American RedCross v. Weatherford, 311 Ark. 656, 659, 846 S.W.2d 641 (1993) (citing Black's Law Dictionary, 6th ed. (1990)). While the bond proceeds left in the escrow accounts after redemption of the bonds may constitute "public funds" under the foregoing definition, it is my opinion that A.C.A. § 14-14-1313 does not govern this case. This determination is based on Resolution No. 126-86, wherein the county judge is authorized to make administrative decisions pertaining to the use of the bond proceeds, and as stated below in my response to the second question posed, it is my opinion that the county judge had the authority to place the proceeds with Worthen pursuant to the depository trust agreement.
In response to Mr. Barnett's second question, it is my opinion that the answer is "yes." In the June 13, 1991, "Order" signed by County Judge Wyatt, the following is stated:
 To insure that the moneys remaining after redemption of the Bonds are disbursed in a manner consistent with the previous orders of this Court and Resolution No. 126-86, approved by the Quorum Court of Independence County on August 25, 1986, the Court finds that approval of a depository trust agreement by and between the County and Worthen National Bank of Arkansas is necessary and appropriate.
County Resolution No. 126-86, to which reference is made in the "Order" set forth above, provides the following in section 2:
 Recognizing that the County Judge is the chief executive officer of Independence County, the Quorum Court hereby authorizes the County Judge to make administrative decisions pertaining to the use of Bond Proceeds under Phase I of the Project development, provided, however, this authority only extends to activities with funds from the Bond Proceeds in accordance with the Bond Trust Indenture and not from other or general revenues of the County. Such authority shall include entering into contracts necessary to development of Phase I of the project and is based on the requirement that the County Judge shall provide the Quorum Court with regular reports concerning the progress of the project and the expenditures of funds from the Bond Proceeds.
The bond proceeds, as discussed above, were to be deposited in escrow accounts pursuant to the bond trust indenture. The indenture provided for three separate escrow accounts: the "Bond Reserve Escrow Account," the "Reserve and Contingency Escrow Account," and the "Construction Escrow Account." See Sections 6.11 to 6.16 on pp. 84-89 of "Indenture." All adjustable rate bond proceeds in each of these three escrow accounts were to be "irrevocably held in trust, invested and disbursed solely in accordance with this Section 6.16." Section 6.16 on pp. 85-86 of "Indenture." Because Section 2 of Resolution No. 126-86, as set forth above, specifically authorizes the County Judge of Independence County to "make administrative decisions pertaining to the use of Bond Proceeds under Phase I," it is my opinion that deposit of the proceeds in question into a trust with Worthen Bank was allowable. See also A.C.A. § 14-204-106(a)(3) (stating that terms in order of the county court may include application of the proceeds of the bonds).
With regard to Mr. Barnett's third question, it is my opinion that the answer is "no." The statutes codified at A.C.A. §§14-73-101 to -104 (1987) pertain to local government reserve funds which may be established by those local governments who wish to "own, acquire, construct, reconstruct, remodel, equip, extend, operate, maintain, or otherwise provide improvements," and the costs for such improvements may be accumulated out of revenues from year to year. A.C.A. § 14-73-102(a). The reserve is required to be authorized by resolution of the governing body. A.C.A. § 14-73-102(b). Such reserve funds are required to be "established by written agreement with a trustee independent from the local government." A.C.A. § 14-73-103(a). After the execution of the trust agreement, the local government "may, during the fiscal year in which the agreement is executed and in subsequent fiscal years, appropriate, pay, or disburse the funds into the reserve as the governing body may determine during those fiscal years." A.C.A. § 14-73-104. As the depository trust agreement with Worthen was not established as a reserve fund pursuant to these procedures, it is my opinion that A.C.A. § 14-73-103 is inapplicable in this case.
With regard to Mr. Barnett's fourth question, A.C.A. § 23-32-1003 pertains to the deposit of funds of public officers and agencies into financial institutions of this state. Specifically, the statute states in subparagraph (b)(1) that a state bank may secure the deposit of such funds, "subject to the depositor's discretion regarding the suitability of the collateral," by the pledge or escrow of various assets of the bank. The assets to which Mr. Barnett refers in his question and which appear in subparagraph (b)(1)(E) of A.C.A. § 23-32-1003 are as follows:
 Shares of any open-end or closed-end management-type investment company or investment trust registered under the Federal Investment Company Act of 1940, as amended, the portfolio of which is limited to the securities described in subdivisions (b)(1)(A)-(b)(1)(C) and repurchase agreements fully collateralized by such securities, provided that the investment company or investment trust takes delivery of the collateral either directly or through an authorized custodian; provided, however, that this subdivision (1)(E) shall not apply to county funds
or funds under the possession or control of a county treasurer at the time of the deposit. This subdivision (1)(E) shall not apply to any funds invested or deposited by the State Treasurer. [Emphasis added.]
In my opinion, the bond proceeds which were left in the escrow accounts after redemption of the bonds and which were placed with Worthen Bank pursuant to the depository trust agreement constitute "county funds" and thus are not subject to being secured by the type of bank assets delineated in A.C.A. § 23-32-1003(b)(1)(E). This determination is based on the fact that, once redemption of the bonds occurred, the excess moneys left in the escrow accounts belonged to the county and, even though these moneys have been deposited with Worthen, they are still subject to the control of the county and their characterization as "county funds" has not been affected. It should also be noted that the "Depository Trust Agreement" itself refers to the moneys as funds of the county. See, e.g., p. 2 of the "Agreement" (stating "[T]he Trustee shall maintain the accounts and funds of the County as hereinafter set forth. . . .")
With regard to Mr. Barnett's fifth question, I am not sure as to what he is inquiring. The types of bank assets listed in A.C.A. § 23-32-1003(b)(1)(E) are allowed to be used by state banks to secure the deposit of the types of public funds set forth in subparagraph (a) of the statute. Section 23-32-1003(b)(1)(E) does not, however, mean that the public funds may be placed into
those kinds of assets; rather, it means only that the funds may be secured by the pledge or escrow of such assets. In any event, this question is rendered moot due to my response to Mr. Barnett's fourth question.
With regard to Mr. Barnett's sixth question, the statutes specifically relating to county treasurers are codified at A.C.A. §§ 14-15-802 to -811 (1987 Cum. Supp. 1993). I find nothing therein which would place upon Mr. Barnett the type of duty described in his question.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] I assume that the portion of the bond trust indenture (pp. 68-94) submitted to this office with the request for an opinion is taken from the original indenture which, according to the correspondence, was dated December 1, 1985. There is, however, no date on the copy submitted to indicate this. In the "Depository Trust Agreement" dated May 31, 1991 (attached to June 13, 1991, "Order" of County Judge David Wyatt), reference is also made to a "Supplemental Bond Indenture," which was executed on April 28, 1986, and to a "Second Supplemental Bond Indenture," which was executed on October 31, 1988. Copies of neither of these was submitted with the request; however, since the questions posed by Mr. Barnett relate to matters which occurred after redemption of the bonds, these trust indentures do not appear to govern the disposition of the bond proceeds at issue.