The Honorable Armil O. Curran State Representative 210 West Main Street Clarksville, Arkansas 72830-3010
Dear Representative Curran:
This is in response to your request for an opinion regarding the proper construction of Act 272 of 1997. That act requires certain water and sewer providers to obtain an annual audit of their operations. Specifically, the relevant portion of the act, now codified at A.C.A. §14-234-119 (Supp. 1997), provides as follows:
 (a) Any county, municipality, improvement district, or other entity receiving public funds or public grants that provides water or sewage services and having at least one hundred (100) service connections shall procure an annual financial audit of the system. [Emphasis added.]
The balance of the act requires a management letter, the employment of accountants, and the filing of the audit report and management letter with the Division of Legislative Audit. The act also states that "[a]ny entity not complying with [the act] shall not be eligible to receive any funding or grants flowing thorough agencies of the State of Arkansas." A.C.A. § 14-234-122 (Supp 1997).
You two questions regarding this act are as follows:
 1. Does the term "receiving public funds" include moneys paid by users to a water or sewer entity?
 2. If the answer to No. 1 is "yes," is a water or sewer entity other than a county, municipality, or improvement district collecting user fees from private citizens or businesses, but not receiving funds or grants from a governmental entity, subject to the audit requirements of Act 272 of 1997?
You state that you sponsored House Bill 1583, which became Act 272 of 1997, and that it was your intent for the Act to apply to all water and sewer service providers collecting funds from the "public" and having at least one hundred (100) service connections. You state that the intent of the term "public funds" was to include any moneys collected from the general public users of the services.
The question posed for my opinion is whether this intent has been sufficiently expressed in the language employed in the act.
It has been stated that the basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intention of the legislature. Vanderpool v. Fidelity Ca. Ins. Co.,327 Ark. 407, 939 S.W.2d 280 (1997); Graham v. Forrest City HousingAuthority, 304 Ark. 632, 803 S.W.2d 923 (1991). It has also been stated, however, that the legislative intent is gathered from the plain meaning of the language used. Wooten v. State, 325 Ark. 510, 931 S.W.2d 408
(1996). It is held that where the statute is clear and unambiguous, the primary concern is with what the document says and not what its drafters may have intended. Omega Tube Conduit Corp. v. Maples, 312 Ark. 489,850 S.W.2d 317 (1993); Mourot v. Arkansas Board of Dispensing Opticians,285 Ark. 128, 685 S.W.2d 502 (1985). See also State ex rel. AttorneyGeneral v. Trulock, 109 Ark. 556, 160 S.W. 516 (1913). The issue is discussed at length in Sutherland, Statutory Construction, §§ 45.05, 45.06, and 45.07, as follows:
 When a question arises concerning applicability of a statute a decision can be reached only by applying some kind of a criterion. For the interpretation of statutes, `intent of the legislature' is the criterion that is most often recited. An overwhelming majority of judicial opinions considering statutory issues are written in the context of legislative intent. . . .
 Whether legislative intent is a meaningful and valid concept for use as a criterion for deciding questions of statutory interpretation has been a classic subject of debate. Since intention is a mental state and only individual persons have minds, only an individual can have an intention. It follows then that the idea of a legislative intent must be regarded as fiction or a figure of speech. . . .
 Such a large number of judicial opinions in cases involving issues of statutory interpretation are written in the context of `legislative intent' that it is not unfair to suggest that many judges may be unaware of the existence of other relevant alternatives for decision making. That there is indeed an alternative, was stated by Justice Holmes in his remark that `we do not inquire what the legislature meant; we ask only what the statute means. . . .' Courts have also supported the Holmes view. [Footnotes omitted.]
Arkansas courts have at least adopted the view that where the language of a statute is plain and unambiguous, a search for the legislative intent is not to be undertaken. Pugh v. St. Paul Fire Marine Ins. Co.,317 Ark. 304, 877 S.W.2d 577 (1994). Rather, the language is given its plain meaning as the best evidence of the collective legislative intent. It has even been stated that the plain language of a statute controls whenever it is unambiguous even if the legislative history suggests a contrary meaning. Gilmer v. Walt Disney Co., 915 F. Supp. 1001 (W.D. Ark. 1996).
At issue, therefore, is whether the pertinent section of Act 272 is plain and unambiguous, or whether there is an ambiguity in the act which would authorize a court to engage in a search for the legislative intent. In determining legislative intent, a court will look to a statute's language, subject matter, object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that throw light on the subject. Bryant v. McLeod,318 Ark. 781, 888 S.W.2d 639 (1994).
The pertinent section of the statute states that: "Any county, municipality, improvement district, or other entity receiving public funds or public grants that provides water or sewage services and having at least one hundred (100) service connections shall procure an annual audit. . . ." In my opinion the plain meaning of the language "receiving public funds or public grants" means receiving moneys belonging to the government, and cannot, on its face, be interpreted to refer to moneys received from individual customers or members of the water or sewer associations.
In Sebastian County Chapter of the American Red Cross v. Weatherford,311 Ark. 656, 846 S.W.2d 641 (1993), the court, in discussing the definition of "public funds" for other purposes, quoted from Black's Law Dictionary
6th Ed. (1990) as defining the term to mean "[m]oneys belonging to government, or any department of it, in the hands of a public official."311 Ark. at 659. The court in Weatherford stated that it was giving the term "public funds" its "plain and ordinary meaning which is best evidenced by Black's Law dictionary and the definition `moneys belonging to the government.'" 311 Ark. at 661. Cf. also generally, A.C.A. §19-8-202 (defining the term "public funds").
In analyzing the language of the pertinent statutory provision, it is clear that the first pertinent phrase requires an audit of any county, municipality, or improvement district water or sewer provider. See, e.g., Op. Att'y Gen. 97-270. The last portion of the relevant sentence then provides that any "other entity" receiving public funds or public grants that provides water or sewage services and has at least one hundred service connections shall procure an annual audit. Such other entities often take the form of private nonprofit corporations set up under the general nonprofit corporation laws, and typically subsist on "membership dues" and some form of regularly assessed charge for the services provided to their individual customers.[1] In my opinion the phrase "receiving public funds or public grants" cannot be construed on its face to encompass the receipt of such membership dues or customer funds. These are not, according to the plain meaning of the term, "moneys belonging to the government." If this construction were adopted, any retail store or business selling goods or services to the general public would be in receipt of "public funds or public grants." I cannot so construe the statute or even opine that there is any ambiguity in this regard.
There is another reason for reaching the same conclusion. A common rule of statutory construction is to give effect to each word of the legislature, so that no language is reduced to surplusage. See Locke v.Cook, 245 Ark. 787, 434 S.W.2d 598 (1968). If the legislature had intended to require an annual audit of water and sewer providers servicing at least one hundred connections and collecting money from the general public, it would have been unnecessary to insert the words "receiving public funds or public grants" at all. The result would have been achieved by making the act applicable to all service providers with at least one hundred service connections, period.
In addition, a reading of the statue as a whole, in conjunction with the remedy provided for noncompliance, lends to the conclusion that the statute on its face applies to service providers which are in receipt of "public funds" as that term has been judicially defined. The remedy for noncompliance with the audit requirement is that the entity "shall not be eligible to receive any funding or grants flowing through agencies of the State of Arkansas."
I am not insensitive to the legislative aims or intent underlying Act 272. My duty in rendering an official opinion on the matter, however, is to predict what a court of competent jurisdiction would hold on the question. Applying the established rules of statutory construction, as a court would undoubtedly do, it is my opinion that the language of the statute is too plain on its face to admit of any other construction than that expressed by its content. It is unfortunate if the legislative intent may have been otherwise, but that intent must be expressed adequately, in accordance with judicial precedent, to be given effect.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] In many instances these entities also receive federal or state loans or grants. See, e.g., Ops. Att'y Gen. 94-001; 93-154; and 92-205.