Mr. David L. Gibbons, Prosecuting Attorney Fifth Judicial District Post Office Box 3080 Russellville, AR 72811
Dear Mr. Gibbons:
 You have requested my opinion concerning certain matters related to the Johnson County Regional Medical Center.
You state that in 1996, Johnson County leased its county hospital to a private non-profit corporation, the Johnson County Regional Medical Center. The Medical Center receives financial assistance from Johnson County through two methods. One is in the form of a tax that is used for the maintenance of the county-owned hospital building. The other is a $12,000.00 per year payment by the county, which is used to support the hospital's operation of an ambulance service. You have provided copies of the lease agreement document and the document concerning the ambulance service.
Your questions are:
 (1) Does the Freedom of Information Act supersede the lease language for open meetings as stated in Section 21 of the lease agreement because of either the maintenance tax support or the financial support of the ambulance service?
 (2) Will simple refusal by the Medical Center to accept the tax and/or ambulance support each year remove the applicability of the Freedom of Information Act or would the tax or ambulance support or both have to be formally rescinded to remove the applicability of the Freedom of Information Act?
Before responding to your questions, I must point out that my office is not authorized to construe the provisions of local agreements, such as those you have provided for my review. This opinion should not be interpreted as a commentary on the effectiveness or enforceability of any of the provisions of those agreements. Nevertheless, to the extent that you have asked about their interaction with state law, I will address those issues.
RESPONSE
Question 1 — Does the Freedom of Information Act supersede the leaselanguage for open meetings as stated in Section 21 of the lease agreementbecause of either the maintenance tax support or the financial support ofthe ambulance service?
It is my opinion that the language of Section 21 of the lease agreement is inconsistent with the Freedom of Information Act (FOIA), and in the event of a legal challenge, the FOIA would prevail. I will explain this conclusion more fully below.
I begin by setting forth the pertinent language of the FOIA and of the lease agreement.
The FOIA includes the following provision concerning the meetings of entities that are subject to the FOIA:
 (a) Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.
 (b)(1) The time and place of each regular meeting shall be furnished to anyone who requests the information.
 (2) In the event of emergency or special meetings, the person calling the meeting shall notify the representatives of the newspapers, radio stations, and television stations, if any, located in the county in which the meeting is to be held and any news media located elsewhere that cover regular meetings of the governing body and that have requested to be so notified of emergency or special meetings of the time, place, and date of the meeting. Notification shall be made at least two (2) hours before the meeting takes place in order that the public shall have representatives at the meeting.
 (c)(1) Executive sessions will be permitted only for the purpose of considering employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee. The specific purpose of the executive session shall be announced in public before going into executive session.
 (2)(A) Only the person holding the top administrative position in the public agency, department, or office involved, the immediate supervisor of the employee involved, and the employee may be present at the executive session when so requested by the governing body, board, commission, or other public body holding the executive session.
 (B) Any person being interviewed for the top administrative position in the public agency, department, or office involved may be present at the executive session when so requested by the governing board, commission, or other public body holding the executive session.
 (3) Executive sessions must never be called for the purpose of defeating the reason or the spirit of this chapter.
 (4) No resolution, ordinance, rule, contract, regulation, or motion considered or arrived at in executive session will be legal unless, following the executive session, the public body reconvenes in public session and presents and votes on the resolution, ordinance, rule, contract, regulation, or motion.
 (5)(A) Boards and commissions of this state may meet in executive session for purposes of preparing examination materials and answers to examination materials that are administered to applicants for licensure from state agencies.
 (B) Boards and commissions are excluded from this chapter for the administering of examinations to applicants for licensure.
 (6)(A) Subject to the provisions of subdivision (c)(4) of this section, any public agency may meet in executive session for the purpose of considering, evaluating, or discussing matters pertaining to public water system security as described in § 25-19-105(b)(16).
(B) Subdivision (c)(6) of this section shall expire on July 1, 2005.
A.C.A. § 25-19-106.
Section 21 of the lease agreement between Johnson County and the Johnson County Regional Medical Center states:
 Open Meetings. Lessee agrees that the meetings of its Board of Directors shall be open to the public; provided, however, that any portion of such meetings concerning employment matters, appeals or hearings as a part of the medical staff credentialing, peer review or corrective action process, or meetings with counsel concerning litigation or potential litigation against Lessee, may be closed. However, no official action may be taken except in open session.
Amended and Restated Assignment and Lease Agreement Between JohnsonCounty, Arkansas and Johnson Regional Medical Center, Dated May 1, 2004.
The above-quoted language from Section 21 of the lease agreement is clearly inconsistent with the quoted section of the FOIA to the extent that it permits executive sessions for purposes not authorized in the FOIA, and to the extent that it permits persons to attend executive sessions who are not authorized by the FOIA to do so. The reference in Section 21 of the lease agreement to "employment matters" is broader that the permissible scope of executive sessions as described in A.C.A. §25-19-106(c)(1) ("employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee"). Moreover, under the FOIA, counsel cannot attend executive sessions to discuss litigation. A.C.A. § 25-19-106(c)(2) and Op. Att'y Gen. 97-130. (I note, however, that the provision in Section 21 for discussion of peer review matters in executive sessions does not conflict with the FOIA, because such matters are specifically exempted from disclosure under the FOIA by the provisions of A.C.A. § 16-46-105.)
The crucial question, then, is whether the Johnson County Regional Medical Center is subject to the FOIA. Although the question of whether any private, non-profit organization is subject to the FOIA is always a question of fact, it is my opinion, based upon the facts that you have provided, that the Johnson County Regional Medical Center is subject to the FOIA. The factors that must exist in order for a private, non-profit entity to be subject to the FOIA have been summarized as follows:
 [T]he FOIA applies only to private organizations that (1) receive public funds, (2) engage in activities that are of public concern, and (3) carry on work that is intertwined with that of government bodies.
Watkins and Peltz, Arkansas Freedom of Information Act (4th Ed. 2004) at 50.
One of my predecessors expressly took the position that a hospital leased by a private, non-profit corporation from a county possesses the second and third characteristics listed above. That is, such an organization does engage in activities that are of public concern, and it does carry on work that is intertwined with that of a government body. See Op. Att'y Gen. No. 96-116 (addressing the question of whether the Saline Memorial Hospital was subject to the FOIA). This conclusion was based on the fact that counties are specifically authorized by law to provide hospital services. See A.C.A. § 14-14-802(b)(2)(E)(iii). Moreover, the county in question had done so prior to its arrangement with the non-profit corporation. The same is true in the situation you have described. The activity of operating a hospital thus appears to be one that would be conducted by the county itself in the absence of the arrangement with the corporation. Counties are also expressly authorized to establish and operate ambulance services. A.C.A. § 14-14-802(b)(2)(D)(i). This activity is also one that is of public concern and that would, but for the agreement with the non-profit corporation, be carried out by the county. The activities of the operation of a hospital and an ambulance service constitute work that is intertwined with that of a government body. Accordingly, I conclude that the Johnson County Regional Medical Center meets the second and third criteria summarized above for purposes of determining the applicability of the FOIA.
My predecessor did not have enough information to determine whether the hospital that was in question in Opinion No. 96-116 received public funds. With regard to that issue, he stated:
 The threshold, and fundamental, question is whether the corporation is "wholly or partially supported by public funds or expending public funds." A.C.A. § 25-19-103(1) (Repl. 1992); see also A.C.A. §§ 25-19-103(2), 25-19-106(a). It is clear that the corporation's lease of the hospital facility from the county, even if the rentals payable thereunder are below fair market rates, will not constitute the receipt of public funds. The government's indirect subsidy of a private organization is not sufficient to make the private organization subject to the Act; rather, this part of the test is satisfied only if there is a direct transfer to the private organization of money belonging to the government. Sebastian County Chapter of American Red Cross v. Weatherford, 311 Ark. 656, 846 S.W.2d 641 (1993).
Op. Att'y Gen. No. 96-116. See also Op. Att'y Gen. No. 97-148 (addressing the question of whether the Conway Regional Medical Center, which was leased by a private non-profit corporation from the city, was subject to the FOIA).
You have indicated that the Johnson County Regional Medical Center is the direct beneficiary of tax funds, which are used to maintain the hospital building. Even though the building is owned by the county rather than by the corporation, it seems clear that in the absence of this funding, the Medical Center either would not be in a position to operate, or would be in a substantially different financial position with regard to its operations. In my opinion, this factor, in combination with the factors discussed above, brings the Medical Center squarely within the purview of the FOIA. It should be noted that a question could arise as to the extent of the applicability of the FOIA. In some situations, a private, non-profit entity may be subject to the FOIA only to the extent of requiring the openness of meetings and records that are "relevant to the task" of the "public business" that is carried out by the entity. SeeCity of Fayetteville v. Edmark, 304 Ark. 179, 187, 801 S.W.2d 275
(1990). The extent of the applicability of the FOIA must be analyzed under all the relevant facts about the Medical Center and its functions.
For the reasons discussed above, I conclude that if the provisions of Section 21 of the lease agreement, concerning open meetings, were challenged on the grounds that they conflict with the requirements of the FOIA in the respects discussed above, a court addressing the matter would likely sustain the challenge, at least to the extent that the FOIA is determined to govern the Medical Center.
Question 2 — Will simple refusal by the Medical Center to accept the taxand/or ambulance support each year remove the applicability of theFreedom of Information Act or would the tax or ambulance support or bothhave to be formally rescinded to remove the applicability of the Freedomof Information Act?
I will assume, for purposes of this discussion, that the tax to which you refer was levied for the specifically-stated purpose you have described. It should be noted that if this assumption is incorrect, and the tax was levied for a different or broader purpose than you have described, a different conclusion may result, depending upon the stated purpose for which the tax was levied. In any event, given this assumption about the tax in question, it is my opinion that the Medical Center cannot, simply by refusing the tax funds or the ambulance payment, remove itself from the applicability of the FOIA.
If a tax has been authorized by law and dedicated to a particular purpose, the taxing entity that is responsible for collecting the tax and dispersing the proceeds does not have the authority to simply stop doing so, or to use the tax proceeds for a purpose other than that for which it was levied. Such action is expressly prohibited by Article 16, § 11 of the Arkansas Constitution. The receipt of tax proceeds is not generally a matter of the choice of the entities for whose benefit the tax was levied; rather, it is a matter of law. In order for the payment of the tax proceeds to the Medical Center to stop, the tax must be repealed, or must be re-levied for another purpose. This must be done in accordance with the procedures that are required by law. See Hooker v. Parkin,235 Ark. 218, 357 S.W.2d 534 (1962); Ops. Att'y Gen. Nos. 2004-033, n. 1; 2003-146; 99-424; 97-146. In order to determine the required procedures for the repeal or re-levy of that tax, it will be necessary to consult the statutory scheme under the authority of which the tax in question was levied. You have not indicated the particular statutory authority under which the tax was levied. I therefore cannot review the required procedure. This is a matter upon which the county attorney can provide advice and counsel.
Similarly, the Medical Center cannot simply refuse to accept payments under the agreement concerning ambulance service. The agreement must be terminated pursuant to its terms. Again, the county attorney can provide guidance as to the termination of the ambulance service agreement.
I must note that even if the tax in question were repealed or re-levied and the agreement concerning ambulance service were terminated, these facts, in and of themselves, would not necessarily result in a conclusion that the Medical Center is not subject to the FOIA. Numerous other facts about the situation of which I am unaware may indicate that the Medical Center should remain subject to the FOIA. As previously indicated, the question of whether any entity is subject to the FOIA will turn largely on the various facts about that entity.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General