The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, Arkansas 72202-4025
Dear Senator Broadway:
I am writing in response to your request for an opinion concerning the application of the Arkansas Freedom of Information Act ("FOIA") to a local Chamber of Commerce. Specifically, you recite the following facts and pose the following question:
 A city advertising and promotion commission paid some advertising bills that the city Chamber of Commerce submitted to them for a Chamber-sponsored event. The Chamber contracted for the advertising and sent the bills to the advertising and promotion commission and the commission paid the vendors directly.
 My question is:
 If the advertising and promotion commission paid for a service on behalf of the Chamber for a certain event at a certain time, at what point, if any, are the Chamber's records and minutes no longer open to public inspection and copying under the FOIA?
RESPONSE
It is impossible to answer this question definitively without full development of the surrounding facts. Your question apparently assumes the applicability of the FOIA and inquires only as to the duration of such applicability. I must note *Page 2 
however, that an initial question arises as to whether the FOIA is triggered. On the limited facts you present, a question arises as to whether the required "direct public funding" of the Chamber is present. Existing Arkansas Supreme Court case law indicates that direct public funding of the private entity is necessary, but the facts you describe are distinguishable from any addressed by the court to date. It is thus an open question whether the FOIA would be triggered in this instance without direct public funding. Factual issues may also affect the answer to your question. In this regard, you have not indicated to what extent any contractual arrangement existed between the commission and the Chamber concerning this "Chamber-sponsored event." I assume there was some type of agreement or contractual arrangement in connection with the situation you describe. The facts surrounding any such contract may be important in determining whether the FOIA applies. Although there is some question as to whether the FOIA is triggered in this instance, I have set out for your information some relevant law on the extent and duration of FOIA applicability to private organizations if the Act is triggered. It is a question of fact to what extent and for how long public funding subjects a private organization to the FOIA.
The FOIA requires entities subject to its requirements to provide copies of non-exempt "public records" to Arkansas citizens who request them. "Public records" are defined for purposes of the FOIA as follows:
 `Public records' means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2005) (emphasis added).
As you can see from this definition, the FOIA clearly applies to governmental entities. As a consequence, records maintained by a city advertising and promotion commission are generally subject to inspection under the FOIA, absent *Page 3 
a relevant exemption. See, e.g., Ops. Att'y Gen. 2005-030. Your question, however, is to what extent the Chamber of Commerce's records will be subject to the FOIA. This question involves the FOIA's applicability to the records of a private entity.
In this regard, it is apparent from the above definition of "public records," that the act applies as well to nongovernmental entities "wholly or partially supported by public funds or expending public funds." See also A.C.A. § 25-19-103(4) and-106(a). Private, non-governmental entities can be subject to the FOIA. The determination of whether a private entity is subject to the FOIA requires a two-step analysis — first, whether the private entity is wholly or partially supported by public funds or expending public funds and second, whether the activities of the private entity are of public concern and sufficiently "intertwined" with the activities of government. See,e.g., Op. Att'y Gen. 2006-086, citing City of Fayetteville v.Edmark, 304 Ark. 179, 801 S.W.2d 275 (1990) and J. Watkins R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (m m Press, 4th ed. 2004), at 50-51 (footnotes omitted). The first requirement is the most pertinent for purposes of your request.
With regard to the threshold "public funding" requirement, it has been stated that:
 The term `public funds,' while not defined in the statute, has been held to mean `[m]oneys belonging to government, or any department of it, in [the] hands of [a] public official.' [Citing Sebastian County Chapter of American Red Cross v. Weatherford, 311 Ark. 656, 659, 846 S.W.2d 641
(1993)].
J. Watkins R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (m m Press, 4th ed. 2004), supra at 48-49.
In concluding that a one dollar a year, thirty-year lease agreement between the Sebastian County Chapter of the American Red Cross and the City of Fort Smith did not meet the "public funding" requirement, the court in Weatherford observed: "H e r e, no payment of government moneyswas made to the Red Cross and the concomitant application of the FOIA should not transpire." Id. at 661 (emphasis added). *Page 4 
The test for applicability of the FOIA to private entities, as it has been articulated by the Arkansas Supreme Court, thus requires the receipt of direct public funding by the private entity in question.Id. See also, Ops. Att'y Gen. 2003-064; 1997-148; 1996-297 (n. 1); 1996-196; 1995-077.
The court in Weatherford couched the question as being "what constitutes support by public funds," looked at various interpretations of "public funds," and concluded that the term did not include the value of real estate leased to the Red Cross for one dollar a year.
The court stated that:
 The plain language of the FOIA confirms that the General Assembly intended that direct public funding be required. As previously noted, the FOIA applies to private entities "supported wholly or in part by public funds." Had the General Assembly intended to extend the FOIA to private organizations that receive any form of government assistance or subsidy, no matter how indirect, it would not have used the words "supported. . . by public funds" to describe the nature of support necessary to trigger the Act.
Id. at 660-661.
In the limited facts you describe, no payment of public funds has been made directly to the Chamber of Commerce. You state merely that the commission paid the public funds directly to an advertising vendor, rather than directly to the Chamber of Commerce. Assuming these are the only relevant facts, the Weatherford decision may be read to dictate that the FOIA is not triggered as to the Chamber. In that event, your question regarding "at what point" the Chamber's records are no longer subject to the Act would be moot.
I am not a finder of fact, however, and must note that all the relevant facts of a given factual scenario must be reviewed in order to determine whether a private entity is subject to the FOIA. You have not indicated to what extent the commission and the Chamber have any contractual relations or interactions that might impact the application of the FOIA to the Chamber. See, e.g., Op. Att'y Gen. 95-121 (discussing the clear applicability of the FOIA to a Chamber of *Page 5 
Commerce contracting with and receiving public funds from an advertising and promotion commission). I assume, however, that there is some contractual arrangement between the commission and the Chamber in connection with this particular "Chamber-sponsored" event or the commission would not be paying the advertising expenses you describe.See, A.C.A. § 26-75-606 (preventing the "general subsidy" of chambers of commerce). Assuming the existence of such a contractual obligation, the facts surrounding it will be important in determining the applicability of the FOIA.
If, for example, the contractual arrangement calls for both the commission and the Chamber to perform certain obligations in connection with the event in question, and the commission paid the advertising bills on its own behalf in satisfying its obligation, it would not appear that the commission's payment of advertising expenses to a vendor would amount to the "whol[e] or partial support" of the Chamber. In addition, the Chamber would not be "expending" public funds for purposes of triggering the FOIA. See, again, A.C.A. § 25-19-103(5)(A).
If the commission instead paid the advertising bills directly to the vendor as some type of consideration for the contractual services of the Chamber, or to satisfy an obligation of the Chamber in connection with the contractual arrangement, a closer question is presented as to whether the FOIA is triggered. There still would be no "direct" public funding flowing to the Chamber and on that basis a court may be unwilling to extend the FOIA to those facts. This latter situation, however, clearly involves a transfer of "public funds," a point highlighted by the court in Weatherford. In this instance, the funds are paid to a third party vendor, however, and not directly to the private entity in question. A factual and legal question arises as to whether, or to what extent, such action would nonetheless amount to "part[ial] support" of the Chamber by "public funds." The court inWeatherford was not faced with this question, addressing instead alleged "support" arising from a favorable lease agreement that took a form other than "public funds." There is no existing Arkansas case law on this particular fact situation and the proper interpretation of the FOIA on this point may therefore by fairly characterized as an open question.
Apart from any issue of partial "support" as discussed inWeatherford, if the Chamber has the contractual right to engage advertising services for which the commission will ultimately be liable, an argument might also be made that the *Page 6 
Chamber is in that event "expending public funds" so as to bring it within the ambit of the FOIA.
In my opinion, therefore, these possible facts present a closer question than the one the court addressed in Weatherford. See also Op. Att'y Gen. 96-196 (distinguishing Weatherford and concluding that the "State Comprehensive Health Insurance Pool," assuming it was a private entity, was subject to the FOIA despite the lack of direct public funding). Any formulaic application of the Weatherford rule in cases involving a transfer of public funds would have obvious potential for circumvention of the FOIA. As stated above, a private entity can be subject to the FOIA if it is "wholly or partially supported by public funds or expending public funds. . . ." If this precept, as interpreted in Weatherford, requires a direct payment by the government to a private entity, obviously the rule can be evaded by the government paying the entity's creditors directly rather than paying the public funds to the private entity. The FOIA requires a "common sense" approach.Weatherford, supra.
Again, however, there are no cases of the Arkansas Supreme Court supporting the applicability of the FOIA to a private entity in the absence of direct public funding. I can only opine that the law is underdeveloped on the possible facts you present, which presumably involve a contractual relationship between the government and a private entity, with no direct public funding flowing to the private entity. Under existing law, therefore, the first requirement for finding a private entity subject to the FOIA may be lacking in the situation you describe. This is true despite the fact that a contractual relationship may render the second requirement (the "intertwining" with the activities of government) present. Again, however, a full analysis of the applicable facts is necessary to answer the question. I cannot undertake such a review in the limited format of an official Attorney General opinion.
Because I have concluded above that the FOIA may not be triggered without direct public funding (which appears to be absent in the limited facts you describe), it may be unnecessary to address the balance of your question regarding "at what point, if any. . . the Chamber's records and minutes [are] no longer open to public inspection and copying under the FOIA." (Emphasis added). Your question assumes the applicability of the FOIA, however, and in the event it applies to the particular facts at issue, I will set out some commentary below on the general state of the law on this point. *Page 7 
Two recognized commentators on the FOIA have observed the following in this regard:
 The Court's opinion [in Edmark, supra] suggests rather clearly that a private organization that enjoys only partial financial support from government is only partially bound by FOIA requirements. That is, the FOIA applies only to records and meetings `relevant to [the] task' for which a private contractor is hired or a nonprofit corporation receives a government grant. [Quoting Edmark, 304 Ark. at 187; footnote omitted.]
 * * * A related question arises with respect to a private entity that once received public funds but no longer does. With respect to records, the Attorney General has opined that documents coming into the entity's possession after the termination of public support are not subject to the act [footnote omitted], while records created or received during the funding period . . . remain open to the public on a continuing basis. [Footnote omitted.] . . . A factual inquiry would be necessary to determine the point at which the entity is no longer supported by public funds. [Footnote omitted.]
 * * * Sometimes there will be little difficulty in pinpointing the termination date, as would be the case when a private entity provides services for a specified term under a city contract. E.g., Ark. Op. Att'y Gen. No. 1992-220. In other situations, the inquiry will not be so easy.
THE ARKANSAS FREEDOM OF INFORMATION ACT, supra at 58-59 and n. 92.See also, Ops. Att'y Gen. 2004-223; 2001-352; 2001-069; 99-090; 96-290; 96-229; 96-267; 95-121; and 94-023.
In my opinion, therefore, assuming the FOIA is initially triggered with regard to a particular private organization, it is a question of fact: 1) to what extent the FOIA *Page 8 
will apply to that entity's records, and 2) whether a particular instance of public funding is still operative for purposes of subjecting that entity to the FOIA. If any direct public funding is received in connection with a particular contract, there "should be no question regarding the degree to which the Chamber's records are subject to the FOIA." See Op. Att'y Gen. 95-121 at 5.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General *Page 1