CITY OF FAYETTEVILLE and Scott Linebaugh *v.* Dave EDMARK and Donrey, Inc. d/b/a Springdale News

90-88                                    801 S.W.2d 275

Supreme Court of Arkansas
Opinion delivered December 17, 1990

*Niblock Law Firm*, by: *Walter R. Niblock* and *Katherine C. Gay*; and *McDermott, Will & Embry*, by: *Steven F. Pflaum*, for appellants.

*Henry Kinslow* for amicus curiae Arkansas Trial Lawyers Association.

*David M. Olive*, Asst. Gen. Counsel for Donrey Medial Group, for appellees.

*Bullock Law Firm*, by: *Bunny Bullock* and *Lu Hardin*, for amicus curiae Arkansas Press Association.

BOBBY MCDANIEL, Special Justice. This case involves an appeal from an order of the Circuit Court of Washington County directing that legal memoranda prepared by outside counsel for the City of Fayetteville be released to the public under the Freedom of Information Act (FOIA). The trial court found the documents to be covered by the FOIA and ordered the appellants, the City of Fayetteville and its acting city manager, Scott Linebaugh, (City) to produce the documents to appellees, Dave Edmark and Donrey, Inc., d/b/a Springdale News (Donrey).

To comprehend the complexity of the facts and issues presented here, a detailed summary of events and litigation maneuvering is necessary. The circumstances underlying Donrey's request for production of documents relate to an undertaking by the City as part of the Northwest Arkansas Resource Recovery Authority (Authority) to develop and operate an incinerator and a landfill. In short, the City issued bonds, without an election, in the amount of approximately $22,000,000 and let contracts to construct the incinerator. After the Authority issued the $22,000,000 in bonds, which had been unconditionally guaranteed by the City, the public voiced strong opposition to the incinerator and landfill and voted to reject the project. The Authority then proceeded to cancel contracts and to attempt to repay the bonds, but found it was approximately $7,000,000 short of funds to repay the bondholders.

Although the City had a regular city attorney, the City retained outside counsel due to the complexity of the circum-

stances surrounding the disengagement process and potential litigation. The City is represented by attorneys of McDermott, Will & Emery (McDermott) based in Washington, D.C., and the Niblock Law Firm of Fayetteville, Arkansas, (Niblock) and they have been paid approximately $400,000 of public funds for fees and expenses. The attorneys have generated extensive documents analyzing the legal circumstances and potential litigation issues; Donrey filed an FOIA request seeking disclosure of these legal memoranda.

A separate suit was filed in the Chancery Court of Washington County and is referred to as the "incinerator litigation," *Robson* v. *City of Fayetteville, et al.*, (E-89-1170), and was assigned to Judge Oliver Adams. It challenges, among other things, the authority of the City to guarantee bonds of this type and attempts to invalidate an ordinance passed by the City to raise sanitation fees to cover the $7,000,000 shortfall on the bonds. The City sought a protective order from Judge Adams to block the FOIA request of Donrey. Judge Adams denied the motion for a protective order on the grounds that the proper parties were not before the court and, thus, the court lacked jurisdiction. The appellees were not parties in that action. No appellate relief of this denial was sought by the City.

The City then filed an action against Dave Edmark, the Springdale News, and others for declaratory judgment in the Chancery Court of Washington County (E-89-1443). Judge Thomas F. Butt denied the petition for lack of jurisdiction. The record reflects that the City filed a notice of appeal in the chancery court and ordered a transcript; however, the appeal was not pursued.

The prosecuting attorney, in the Circuit Court of Washington County, Criminal Division, issued a prosecutor's subpoena for the documents covered by the Donrey FOIA request (CR-90-1). The City filed a motion to quash the subpoena and a protective order was issued by Circuit Judge Mahlon Gibson prohibiting, *inter alia*, the prosecutor or his staff from releasing any of the documents produced. The documents produced to the prosecutor are the same documents at issue in this case and were examined by the trial court *in camera*. Judge Gibson, as acknowledged by the record and counsel for appellants, left open the issue of

Donrey's right to proceed in circuit court, civil division, to obtain FOIA documents.

After the protective order to the prosecutor was issued, Donrey renewed its FOIA request. Upon refusal by the City to comply, Donrey filed suit in the Circuit Court of Washington County, Civil Division, (CIV-90-0043), to obtain the documents. The City opposed the petition asserting that the documents were not in the possession of the City, were not "public documents," the documents would not assist the public in judging the performance of the public officials, the criminal protective order barred the release, and the release of the documents would violate the City's right to a fair trial in the incinerator litigation. This appeal is from Circuit Judge Kim Smith's order that the documents be disclosed.

The FOIA ws originally enacted in 1967 and is now codified at Ark. Code Ann. § 25-19-101 through 107 (Supp. 1989). Unlike many cases involving statutory interpretation, the FOIA specifically states the legislative intent.

§ 25-19-102 — Legislative intent.

It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this chapter is adopted, making it possible for them, or their representatives to learn and to report fully the activities of their public officials.

The intent of the FOIA establishes the right of the public to be fully apprised of the conduct of public business. The first case interpreting the FOIA was *Laman* v. *McCord*, 245 Ark. 401, 432 S.W.2d 753 (1968), in which this court held that there was no attorney-client privilege concerning FOIA information. *Laman* has served as the benchmark for the interpretation of the intent of the FOIA and provides the perspective from which we view the legislative intent. This court said:

As a rule, statutes enacted for the public benefit are to be interpreted most favorably to the public. . . . We have no hesitation in asserting our conviction that the Freedom of

Information Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved.

The language of the act is so clear, so positive, that there is hardly any need for interpretation. . . .

*Laman, supra.*

Therefore, the points of error raised by appellants must be viewed in the light of the clear intent and purpose of the statute.

## I. PUBLIC RECORDS

Points I and II challenge the findings by the trial court that the legal memoranda prepared by the outside attorneys, McDermott and Niblock, are documents within the coverage of the FOIA. Appellants first contend that the extensive legal memoranda are not "public records," subject to disclosure. They contend that a) the requested memoranda do not constitute a record of the performance or lack of performance of official functions; and, b) the City's outside counsel are not "agencies" supported by public funds. This argument is without merit.

Although not binding as precedent, an Attorney General's Opinion, (89-095), concluded the memoranda were public records and subject to the FOIA. The trial judge, Hon. Kim Smith, stated, ". . . I think it would be ludicrous for us to say these aren't public records. . . ." We agree.

"Public records" is defined in the FOIA at Ark. Code Ann. § 25-19-103(1) (Supp. 1989):

"Public records" means writings, recorded sounds, films, tapes, or data compilations in any form, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.

The memoranda include extensive evaluations of the propri-

ety of the decisions and actions undertaken by City and Authority officials. For example, one document details the specifics in which the final contract varies from the terms approved by the City's board of directors. Another record analyzes the constitutionality of the City's undertaking to unconditionally guarantee the bonds issued by a separate entity, i.e., the Authority. The memoranda clearly could be used to evaluate the performances and decisions of the city officials, the city attorney, and Authority officials.

Counsel for the City conceded that if the documents were in the possession of the regular city attorney, instead of outside counsel, they would be subject to production under FOIA, unless the City could prevail on its arguments relating to the protective order and the fair trial issue.

In *Scott* v. *Smith*, 292 Ark. 174, 728 S.W.2d 515 (1987) documents from the *litigation files* of a state agency's deputy general counsel were held subject to FOIA. This court rejected the agency's argument that the litigation files were not subject to FOIA disclosure on the grounds of A.R.E. Rule 502 (lawyer-client privilege) and ARCP Rule 26(b)(3) (attorney work product) since there is no statutory exemption for the attorney-client privilege or attorney work product. *See* Ark. Code Ann. § 25-19-105(b) (Supp. 1989). Similarly, the legal memoranda presented to the trial court and reviewed *in camera* here are in the nature of litigation files and, as such, are "public records" within the meaning of the FOIA.

## II. POSSESSION OF THE DOCUMENTS

The City's second contention that the records are not in its possession and are thus not subject to disclosure is also without merit. The legal memoranda were in the possession of McDermott and Niblock who were retained as attorneys for the City in lieu of the regular city attorney. In fact, when Scott Linebaugh, acting city manager, was ordered to produce the records to the prosecuting attorney, it was an attorney with the Niblock firm who delivered the records. The specially retained attorneys were the functional equivalent of the regular city attorney. The City cannot avoid the FOIA requirements by substituting a private attorney for the city attorney. To condone such logic would arguably enable public officials to shield from disclosure sensitive or controversial material by hiring an outside attorney instead of

using its regular city attorney. The FOIA requirements cannot be circumvented by delegation of regular duties to one specially retained to perform the same task as the regular employee or official. This would be contrary to the requirements and intent of the FOIA. See generally J. Watkins, *Access to Public Records under the Arkansas Freedom of Information Act*, 37 Ark. L. Rev. 741, 764 (1984). As Professor Watkins points out,

> When the state or a political subdivision thereof seeks to conduct its affairs through private entities, it seems clear that those entities are for all practical purposes the government itself. It should not matter whether the activity is "proprietary" or "governmental" in nature, for in either case the government is involved in the "public business". Thus when a county official hires a certified public accountant to conduct an audit of a county department instead of using public employees for that purpose, the CPA's records relevant to that task should be obtainable under the FOIA.

▪ The City has paid in excess of $400,000 in legal fees to McDermott and Niblock relating to the disengagement process, which includes advice to, and representation of, the City in the FOIA actions. These fees would certainly fall within the ambit of Section 25-19-103, and any work performed by the attorneys on behalf of the City is subject to the FOIA. Our observation in *Legislative Joint Auditing Comm.* v. *Woosley*, 291 Ark. 89, 722 S.W.2d 581 (1987), is applicable here. We said:

> To agree with the appellant would be to ignore the plain and simple language of the act and deny the public access to these public records. We have never taken a narrow view of the FOIA but have always interpreted it to promote free access to public records and most favorably to the public.

In *Ragland* v. *Yeargan*, 288 Ark. 81, 702 S.W.2d 23 (1986), we also stated:

> We conclude that the objectives of the FOIA are such that whenever the legislature fails to specify that any records in the public domain are to be excluded from inspection, or is less than clear in its intendments, then

privacy must yield to openness and secrecy to the public's right to know the status of its own affairs. We hold, therefore, that the burden of confidentiality rests on the legislation itself, and if the intention is doubtful, openness is the result.

██ The FOIA sets forth the specific exemptions allowed under FOIA and, unless specifically excluded, documents covered by the FOIA must be disclosed. Section 25-19-105 addresses the examination and copying of public records and provides in pertinent part as follows:

(a) Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records.

(b) It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter:

(1) State income tax records;

(2) Medical records, scholastic records, and adoption records;

(3) The site files and records maintained by the Arkansas Historic Preservation Program and the Arkansas Archeological Survey;

(4) Grand jury minutes;

(5) Unpublished drafts of judicial or quasi-judicial opinions and decisions;

(6) Undisclosed investigations by law enforcement agencies of suspected criminal activity;

(7) Unpublished memoranda, working papers, and correspondence of the Governor, members of the General Assembly, Supreme Court Justices, and the Attorney General;

(8) Documents which are protected from disclosure by order or rule of court;

(9) Files which, if disclosed, would give advantage to competitors or bidders; and

(10) Personnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy.

****

*Ragland* v. *Yeargan, supra,* was cited with approval in *Arkansas Highway and Transp. Dep't.* v. *Hope Brick Works, Inc.,* 294 Ark. 490, 744 S.W.2d 711 (1988). In *Hope Brick Works* we affirmed an order directing that working papers of real estate appraisers be disclosed and observed:

> Reading the intent as stated by the legislature, considering our declarations in *Ragland,* and noting that the Act's exceptions do not include the information requested, we are of the opinion that the order directing disclosure was not contrary to the intent of the Act.

■ Consequently, we hold that legal memoranda prepared by outside counsel for the City for litigation purposes are public records within the meaning of FOIA.

## III. PROTECTIVE ORDER

The appellants contend in Point III that the records are exempt from production pursuant to the protective order issued to the prosecuting attorney. This contention is without merit.

The statutory exemption relied on by the City is Section 25-19-105(b)(8), which exempts documents ". . .which are protected from disclosure by order or rule of court." The simple answer to this contention is that the protective order relied upon applied only to disclosure by the prosecuting attorney and his employees. The record discloses that appellants' counsel acknowledged that: "Judge Gibson said that he was not foreclosing the Springdale News from seeking their civil remedy. . . ." Thus, the protective order neither by its terms nor by the judge's intent protected the memoranda from the FOIA disclosure requirements.

■ The City was denied protective orders from the Chancery Court in two separate actions. As previously noted, Chancery Judge Oliver Adams, in E-89-1170, denied, the City's request for a protective order on the grounds that the proper parties were not before the court and, thus, the court lacked jurisdiction. Chancery Judge Thomas F. Butt denied the City's request for a protective order, via a declaratory judgement action, (E-89-1443), for lack of subject matter jurisdiction. Neither

denial was appealed. In the instance case, there was no protective order in place designed to prohibit disclosure to the public of the legal memoranda. The provisions of Section 25-19-105(b)(8) simply do not apply to the factual situation before the court.

■ The City includes in its argument that the records are protected from disclosure by Section 25-19-105(b)(9) which exempts "[f]iles which, if disclosed, would give advantage to competitors or bidders." The City recognizes that to gain relief under this contention would require us to overrule *Hope Brick Works, supra,* which we decline to do. The appellees are not "competitors" of the City within the clear meaning of the statute.

■ Categorizing members of the public who may wish to learn of, and/or disagree with, actions of public officials, even to the point of litigation, does not make such a person or entity a "competitor" as envisioned by the FOIA. The public, for whose benefit the FOIA was enacted, includes both those who support and those who oppose the actions or inactions of public officials, employees or agencies, as well as those who wish to merely learn of and evaluate the actions of public officials. To interpret "competitors" to include those seeking information, such as the media, or even adverse parties in litigation, would be to create an exemption not provided by the legislature. The definition of "public" is broad and is to be liberally interpreted and means the public at large, i.e., the body politic. As noted in *Arkansas Gazette Co. v. Pickens,* 258 Ark. 69, 522 S.W.2d 350 (1975):

> The only way that electors, citizens, or any other member of the public can receive full reports of what transpires in board or committee meetings is by information obtained from the news media. Without such reports, the Freedom of Information Act is without meaning. . . .
> "Statutes enacted for the public benefit should be interpreted most favorably to the public."

■ The public has a right to know about public business, even when the disclosure might benefit an adverse litigant. Under the FOIA, the media, as well as adverse litigants, are members of the public and are entitled to publicly funded information. As juries in federal criminal cases are often instructed, "The Government always wins when justice is done." *See* E. Devitt & C. Blackmar, *Federal Jury Practice and Jury*

*Instructions*, § 15.01 (1977). Thus, enhanced risk that the City may lose litigation does not constitute an exemption.

## IV. PROTECTIVE ORDER AUTHORITY

In Point IV, appellants contend that the circuit court erred in concluding it lacked authority to enter a protective order in the FOIA action that would be binding upon the chancery court in the incinerator litigation. Judge Adams, in the chancery court incinerator litigation, refused to issue a protective order, and no appeal was taken therefrom.

The circuit court did not have authority in the FOIA action to enter a protective order to be binding upon the chancery court in the incinerator litigation. Appellants rely on *Arkansas Newspapers, Inc.* v. *Patterson*, 281 Ark. 213, 662 S.W.2d 826 (1984). However, that case dealt with a circuit court closing two hearings and sealing a motion in a criminal case. The circuit judge, in an FOIA action, refused to disclose the information and open the hearing. A trial court has the inherent authority to protect the integrity of the court in actions pending before it and may issue appropriate protective orders that would provide FOIA exemption under Section 25-19-105(b)(8). Such was not the case here.

In *Patterson*, the protective order had been previously entered, was broad in scope, and was issued by the court with jurisdiction over the underlying litigation. Such an order is within the scope of Section 25-19-105(b)(8) which provides for exemption of "[d]ocuments which are protected from disclosure by order or rule of court." We interpret this section as requiring the circuit court to grant exemption if another court has restricted disclosure of documents being sought. The FOIA court must give credit to protective orders previously issued by other courts. The circuit court in an FOIA action may grant exemptions only for the grounds specifically covered by the FOIA itself. *See Laman* v. *McCord, supra.*

The trial court in the incinerator litigation did not issue a protective order, although it had the authority to do so. The documents examined *in camera* in this case, however, would not be appropriate for a protective order. These documents are precisely the type envisioned by the FOIA to be produced to the

public. Since there was no general protective order in place by another court to prohibit disclosure of the documents, the trial court was correct in ordering production.

## V. FOIA POLICY CONSIDERATIONS

■ Finally, appellants assert that the trial court failed to recognize the broader consequences of ordering production of legal memoranda under the FOIA. This is a policy argument and is for the legislature. Essentially, appellants assert that the City would be denied a fair trial if it is required to produce its work product. As noted in the 1987 case of *Scott* v. *Smith*, *supra*, there is no attorney-client privilege or attorney work product exemption under the FOIA. In *Laman*, *supra*, in 1967, this court ruled there was no attorney-client privilege in FOIA cases.

The FOIA has not been amended to include exemptions for attorney-client privilege or for attorney work product. Such exemptions are policy decisions and are for the legislature to make. In *Scott* v. *Smith*, *supra*, the court unanimously rejected the public policy argument advanced by the agency that attorney-client privileged information and work product information should be exempted. The court stated:

> The agency argues that policy considerations favor reversal, but we have already addressed that issue. 'Policy decisions such as that are peculiarly within the province of the legislative branch of the government. In this instance that branch has spoken so unequivocally that its command cannot be misunderstood. Our duty is simply to give effect to its mandate.' *Laman* v. *McCord*, 245 Ark. at 406, 432 S.W.2d at 756. *Laman* has stood as our interpretation of the act on this subject for nineteen years, and through those years the General Assembly has not exercised its option to amend the act to create a specific exception for the attorney-client privilege. Accordingly, we affirm the decision of the trial court.

■ The FOIA does exclude "working papers" under limited circumstances. *See* Section 25-19-105(b)(7), *supra.* However, trial counsels' legal memoranda are not excluded by the FOIA and must be produced.

■ The City asserts production of the memoranda will

deny it a fair trial. The City is not being deprived of a fair trial within constitutional standards. Realistically, the City's position is that it may have a lesser chance of winning a trial if the memoranda are produced. Enhanced risk of losing a trial does not equate to not getting a fair trial, but is a policy decision for the legislature. In *Laman* v. *McCord, supra*, the court stated:

> On the one hand, to deny to the city council the right to meet in secret with the city attorney might in some instances work to the public disadvantage. But, on the other hand, to allow the council to go into executive session at any time, upon the pretext of consulting the city attorney about legal matters, might readily open the door to repeated and undetectable evasions of the Freedom of Information Act - also to the public disadvantage. Policy decisions such as that are peculiarly within the province of the legislative branch of the government.

The public includes those on both sides of the litigation and, also, those not involved in the case. Citizens wishing to become informed as to the internal events of government are, as a practical matter, limited in their capacity to gain information from media sources. Making public information available to the public does not deprive the City (the public) of a fair trial.

The City is facing a potential liability of at least $7,000,000 as a result of actions and decisions of public officials. Citizens of Fayetteville may wish to become informed as to the contents of the memoranda to enable them to evaluate the performance of public officials. In addition, the public located elsewhere, such as Jonesboro, Little Rock, Pine Bluff, etc., may wish to become informed as to the circumstances of this case to avoid reinventing the liability wheel facing the City.

When the public is involved in litigation, this court has given deference to the public policy decisions of the legislature concerning production of litigation files of attorneys for public officials, employees or agencies. We have steadfastly ordered production of litigation files. *See Laman* v. *McCord, supra; Scott* v. *Smith, supra;* and *Hope Brick Works, supra.*

> [W]e specifically rejected the argument for reversal that the court erred in holding that the Freedom of Information

Act applied to litigation files maintained by attorneys representing state agencies. Refusing to create an exemption or exception to the Freedom of Information Act based upon the attorney-client relationship, we pointed out that the attorney-client privilege was not one of the Act's exceptions.

*Hope Brick Works, supra.*

Production of litigation files does not equate to denial of a fair trial. The trial court controls the admissibility of evidence and the determination of applicable law and always has the inherent authority to secure the fair trial rights of litigants before it. *See, e.g., Patterson, supra.*

In *McCambridge* v. *City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989), this court dealt with the balance between the constitutional right of privacy of a private citizen who attempted to block disclosure of private documents, including attorney-client privileged documents, which fell within the public realm when seized by police at a crime scene. The otherwise private documents were subject to the FOIA and ordered produced. We continued to hold that additional exemptions are subject to creation only by the legislature and said:

> First, the Freedom of Information Act should be broadly construed in favor of disclosure, and exceptions construed narrowly in order to counterbalance the self-protective instincts of the governmental bureaucracy. Second, the attorney-client privilege, A.R.E. Rule 502, is an evidentiary rule limited to court proceedings. A.R.E. Rule 101. It has no application outside of court proceedings and, therefore, cannot create an exception to a substantive act.

The FOIA is a public policy decision by the legislature that balances the right of the public to information against competing interests. It is up to the legislature to fashion additional exemptions to cover the attorney-client privilege or attorney work product. The rules of evidence and of procedure, in addition to the inherent power of a trial court to control actions pending before it, provide adequate safeguards of the appellants' right to a fair trial. As stated in *McCambridge, supra*, the appellants' arguments "could be well addressed to the General Assembly. We can only

interpret the exemption as it is written."

The trial court rendered an appropriate decision in this FOIA case. The broader consequences of disclosure are for the legislature, not the trial court. Until the legislature changes the exemptions, litigation files, including research and analysis memoranda such as before this court, are not exempt. The order of the trial court directing release of legal memoranda pursuant to the FOIA is affirmed.

Affirmed.

HOLT, C. J., and TURNER, J., concur in part and dissent in part.

PRICE, J., not participating.

OTIS H. TURNER, Justice, concurring in part and dissenting in part. I concur in the result reached by the majority in this case; however, to the extent that the majority opinion may serve as precedent for the opening of an attorney's file in response to all FOI requests, I disagree. The attorney-client privilege is well established in the law and has served the judicial process well.

The mere fact that the client is a public agency and the attorney's fee comes from a public fund is insufficient justification for a seemingly cavalier exception to the established rule. I believe that the embrace of the FOIA should not and indeed does not extend to require disclosure of purely legal memoranda — the work product of a retained attorney that remains in the exclusive possession of the attorney and that had not been previously furnished to the public agency.

HOLT, C.J., joins.