The Honorable Barbara King State Representative 106 Tulip Circle Helena, Arkansas 72342-1620
Dear Representative King:
I am writing in response to your request, made on behalf of a constituent, for an opinion on a number of questions concerning the implementation of A.C.A. § 6-13-631 (Repl. 1999), as amended by Act 1716 of 2001. That statute addresses the division of school districts with ten percent or more minority population into single-member zones for the election of school board members. You pose the following questions:
 1. Should a school district that already has a ten percent or greater minority population and already has single-member zones based on 1990 federal Census statistics be required to examine 2000 federal Census statistics in order to determine where population shifts within the district's boundaries may have occurred? If not, what code or statute determines how often, if at any time, a school district should be required to update existing zoned boundaries?
 2. If a school district that has existing single-member zones is required to examine its 2000 federal Census statistics, upon what date should the district and its board have finished the process of redrawing the zoned boundaries based upon the new Census statistics?
 3. If a school district that already has a ten-percent or greater minority population and already has single member zones does not meet the deadline to announce its new boundaries, will it lose twenty percent of its funding according to state law? If not, why not?
 4. If a school district that has existing single-member zones redraws its boundaries and at least one boundary line changes, are school leaders required to allow all residents that live within all of the district's zoned boundaries to vote for new board members? If not, how applicable to this given situation is the Fourteenth Amendment to the U.S. Constitution, which adheres to a "one man, one vote" law?
 5. If a resident lives within one zoned boundary after the 1990 Census and is placed in a new zoned boundary after the redistricting process based upon the 2000 federal Census statistics, should that resident be allowed the opportunity to vote at the time of the new election if his/her board member is not up for election at the time of the rezoning process? (In other words, if John Doe lived in zone A in 1991 and is placed in zone B in 2001, should he not be given the opportunity to vote for a new representative given that the boundary line, not his residence, moved?) If not, who should be allowed to vote, if anybody, if boundary lines are changed within one or several zones?
 6. Can the Attorney General's office issue a directive to the Department of Education to require the district to redraw its boundaries and adhere to the legal opinion?
RESPONSE
The answer to your first question may depend upon the facts surrounding a particular district. Some districts may be exempt from the provisions of A.C.A. § 6-13-631 by virtue of an exemption listed in § 6-13-631(g), as amended by Act 1716 of 2001. As a general matter, however, absent an applicable exemption, it is my opinion that A.C.A. § 6-13-631, particularly subsection (f)(1), requires the division of affected school districts into single-member zones after each federal decennial census. In response to your second question, the applicable statute, A.C.A. §6-13-631, sets the deadline as ninety days prior to the annual school election following the rezoning. That deadline was June 20, 2001. In response to your third question, I have enclosed a copy of Op. Att'y Gen. 2001-140, which addresses this issue. In response to your fourth question, I have enclosed a copy of Op. Att'y Gen. 2001-176, which addresses this issue. Your fifth question is also covered by Opinion2001-176, which I have enclosed. The answer to your sixth question is "no."
Question 1 — Should a school district that already has a ten percent orgreater minority population and already has single-member zones based on1990 federal Census statistics be required to examine 2000 federal Censusstatistics in order to determine where population shifts within thedistrict's boundaries may have occurred? If not, what code or statutedetermines how often, if at any time, a school district should berequired to update existing zoned boundaries?
The answer to this question depends upon whether the particular district is exempt from the provisions of A.C.A. § 6-13-631, by virtue of §6-13-631(g). If exempt from these provisions, the requirements of A.C.A. § 6-13-631 of course do not apply. If not exempted from the provisions of the statute, as a general matter, the zoning requirement is a decennial one, which must occur after the results of "each" federal decennial census. See A.C.A. § 6-13-631(f)(1). The relevant statute provides as follows:
 (a) Beginning with the 1994 annual school election, the qualified electors of a school district having a ten percent (10%) or greater minority population out of the total population, as reported by the most recent federal decennial census information, shall elect the members of the board of directors as authorized in this section, utilizing selection procedures in compliance with the federal Voting Rights Act of 1965, as amended.
 (b)(1) At least ninety (90) days before the election, the local board of directors shall:
 (A) By resolution, choose to elect board members from five (5) or seven (7) single-member zones or from five (5) single-member zones and two (2) at large; and
 (B) With the approval of the controlling county board of election commissioners, divide each school district having a ten percent (10%) or greater minority population into five (5) or seven (7) single-member zones in accordance with the federal Voting Rights Act of 1965, as amended.
 (2) Zones shall have substantially equal population, with boundaries based on the most recent available federal decennial census information.
 (c) A board of directors choosing to elect board members by five (5) single-member zones and two (2) at-large positions may fill the two (2) at-large positions by drawing lots from among the current board members.
 (d)(1)(A) A candidate for election from a single-member zone must be a qualified elector and a resident of the zone.
 (B) A candidate for an at-large position must be a qualified elector and a resident of the district.
 (2)(A) Except as provided in subsection (e) of this section, a district board member shall serve a five-year term.
 (B) A term shall commence when the county court declares the results of the election by an order entered of record.
 (e) At the first meeting of a new board of directors, the members shall establish initial terms by lot so that, to the extent possible, an equal number of positions are filled each year and not more than two (2) members' terms expire each year.
 (f)(1) After each federal decennial census and at least ninety (90) days before the annual school election, the local board of directors, with the approval of the controlling county board of election commissioners, shall divide each school district having a ten percent (10%) or greater minority population into single-member zones. The zones shall be based on the most recent federal decennial census information and substantially equal in population.
 (2) At the annual school election following the rezoning, a new school board shall be elected in accordance with procedures set forth in this section.
 (g)(1) The following school districts shall be exempt from the provisions of this section:
 (A) A school district that is currently operating under a federal court order enforcing school desegregation or the federal Voting Rights Act of 1965, as amended;
 (B) A school district that is operating under a preconsolidation agreement that is in compliance with the federal Voting Rights Act of 1965, as amended;
 (C) A school district that has a zoned board meeting the requirements of the federal Voting Rights Act of 1965, as amended; and
 (D) A school district that a federal court has ruled is not in violation of the federal Voting Rights Act of 1965, as amended, so long as the court order is in effect.
 (2) A school district which on August 13, 1993, was in the process of defending a lawsuit brought under the Voting Rights Act of 1965, as amended, shall also be exempt from the provisions of this section until such time as the lawsuit has been finally resolved.
 (h)(1) On or before August 1, 2002, and every decade thereafter, each and every school district shall submit to the Department of Education a letter stating whether or not its school board falls under this section. In that same letter, each school district that falls under this section shall state how it has complied with this section. Furthermore, in the same letter, any school district that believes that it is exempt from this section shall state under which provision it is exempt.
 (2) The department shall withhold twenty percent (20%) of the annual state funds allocation to a school district not in compliance with this section.
 (i) The State Board of Education is hereby authorized to adopt rules and regulations necessary for the implementation of this section.[1]
Subsection (f)(1) above is clear in making the re-zoning a decennial requirement. Unless a district is exempt from the statute, therefore, a district that already has single-member zones in place pursuant to the 1990 federal decennial census is required by subsection (f)(1) to re-zone into districts with substantially equal population based upon the most recent census information. This decennial requirement is similar in this respect to the requirements for re-zoning of quorum court districts (see Arkansas Constitution, Amendment 55, § 2(a)) and for state legislative districts (see Arkansas Constitution, art. 8, § 4), each of which must occur on a decennial basis.
In my opinion, therefore, the answer to the first part of your first question is "yes," assuming no applicable exemption.
Question 2 — If a school district that has existing single-member zonesis required to examine its 2000 federal Census statistics, upon what dateshould the district and its board have finished the process of redrawingthe zoned boundaries based upon the new Census statistics?
Ninety days before the 2001 annual school election or June 20, 2001. See
Op. Att'y Gen. 2001-140.
Question 3 — If a school district that already has a ten percent orgreater minority population and already has single-member zones does notmeet the deadline to announce its new boundaries, will it lose twentypercent of its funding according to state law? If not, why not?
I have enclosed for your information a copy of Opinion 2001-140, which addresses this issue. As noted in that Opinion, amendment of the existing Board of Education rules and regulations may be necessary to address this question. Reference should be made to any such newly promulgated rules.
Question 4 — If a school district that has existing single-member zonesredraws its boundaries and at least one boundary line changes, are schoolleaders required to allow all residents that live within all of thedistrict's zoned boundaries to vote for new board members? If not, howapplicable to this given situation is the Fourteenth Amendment to theU.S. Constitution, which adheres to a "one man, one vote" law?
I have enclosed for your review a copy of Opinion 2001-176, which addresses this question.
Question 5 — If a resident lives within one zoned boundary after the 1990Census and is placed in a new zoned boundary after the redistrictingprocess based upon the 2000 federal Census statistics, should thatresident be allowed the opportunity to vote at the time of the newelection if his/her board member is not up for election at the time ofthe rezoning process? (In other words, if John Doe lived in zone A in1991 and is placed in zone B in 2001, should he not be given theopportunity to vote for a new representative given that the boundaryline, not his residence, moved?) If not, who should be allowed to vote,if anybody, if boundary lines are changed within one or several zones?
Again, see Opinion 2001-176.
Question 6 — Can the Attorney General's office issue a directiveto the Department of Education to require the district to redrawits boundaries and adhere to the legal opinion?
The answer to this question is "no." The State Board of Education is authorized to adopt rules and regulations to implement the statute in question. I am not invested with any power to direct the actions of the State Board, or the Department of Education, which operates under its supervision. In addition, the Opinions issued by my office are generally advisory only and, as stated by the Arkansas Supreme Court, are "not binding as precedent." City of Fayetteville v. Edmark, 304 Ark. 179,801 S.W.2d 275 (1990).
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
Enclosures
[1] Act 1716 of 2001 adds an additional provision to subsection (g), requiring districts released from federal court desegregation orders to comply with the statute within one hundred and eighty days of such release. The act is effective August 13, 2001.