The Honorable Jodie Mahony State Senator 106 W. Main, Suite 406 El Dorado, AR 71730-3693
Dear Senator Mahony:
You have presented the following question for my opinion:
 Are the financial records of the Tomato Cooperative in Hermitage" public records," as defined in A.C.A. § 25-19-103(5)(A) (a section of the Freedom of Information Act)?
You have enclosed a copy of a newspaper article, which states that the Tomato Cooperative in Hermitage has received substantial loans guaranteed by the U.S. Department of Agriculture. The article also states that the Cooperative is being dissolved and its property sold at auction. You have also enclosed a copy of a letter from a local newspaper submitting a Freedom of Information request for the Cooperative's financial records. This letter states that the Cooperative is "funded almost exclusively by public money — namely, federal grants and loans guaranteed by the U.S. Department of Agriculture." Finally, you have enclosed a copy of a letter from the Cooperative's attorneys, denying that the Cooperative is subject to the Freedom of Information Act.
RESPONSE
I am unable to opine definitively in response to your question because the answer depends entirely upon facts to which I am not privy. Nevertheless, I will discuss the legal principles upon which the appropriate factual inquiry and determination must be based.
I will begin by setting forth the definition of "public records," as stated in the Freedom of Information Act. The pertinent definition states:
 (5)(A) "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A).
I most recently set forth the standard for analyzing the issue of whether a particular entity's records are "public records," subject to the Freedom of Information Act, in Opinion No. 2001-352. I stated:
 The FOIA applies to all governmental entities within the state. A.C.A. §§ 25-19-103 (Supp. 2001) and 25-19-106(a) (Supp. 2001). It also applies to "any other agency wholly or partially supported by public funds or expending public funds." A.C.A. § 25-19-103(1) (Supp. 2001). This language reveals that private, nongovernmental entities can be subject to the FOIA. See also generally Opinion No. 2001-069.
 The mere receipt of public funds is not, however, alone sufficient to bring a private organization within the reach of the FOIA. The question is whether the private entity carries on "public business" or is otherwise intertwined with the activities of government. City of Fayetteville v. Edmark, 304 Ark. 179, 801 S.W.2d 275 (1990) (private attorneys retained by city); Ops. Att'y Gen. Nos. 2000-039 (private non-profit corporation licensed by the Department of Human Services to provide services for the developmentally disabled), 95-273 (private non-profit area on agency designated to provide services to older Arkansas under a federal grant program) and 90-243 (non-profit organizations that receive grants from cities or counties under A.C.A. §§ 14-173-101 to -105 to promote economic development). The court in Edmark, supra, in considering whether the files of private attorneys retained by a city were public records, determined that the FOIA should apply when the government "seeks to conduct its affairs through private entities," for in that situation "it seems clear that those entities are for all practical purposes the government itself." 304 Ark. at 187, quoting J. Watkins, Access to Public Records Under the Arkansas Freedom of Information Act, 37 Ark. L. Rev. 741, 764 (1984).
Op. Att'y Gen. No. 2001-352.
Professor Watkins, a recognized commentator on the FOIA, has summarized the test that applies to private organizations as follows:
 [T]he FOIA applies only to private organizations that (1) receive public funds, (2) engage in activities that are of public concern, and (3) carry on work that is intertwined with that of government bodies. This approach is sound. If the mere receipt of public funds were enough to trigger the act, it would reach anyone who received government largesse, including welfare recipients and private hospitals that receive Medicare and Medicaid payments. As the Supreme Court has recognized, however, the FOIA should apply when the government "seeks to conduct its affairs through private entities," for in that situation "the entities are for all practical purposes the government itself." Or, as the Attorney General has put it, the FOIA covers a publicly funded organization that enjoys a "symbiotic relationship" with the state or its political subdivisions: "[w]hen the activities of a private organization and the government become intertwined, the private organization may well render itself part of the State for [FOIA] purposes."
J. Watkins, The Arkansas Freedom of Information Act 42 (3rd ed. 1998) (footnotes omitted) (quoting Edmark, 304 Ark. at 187 and Ark. Op. Att'y Gen. No. 83-163).
As this office has previously noted, it is unclear just how "intertwined" the private entity must be with the government before the FOIA will be deemed applicable. See, e.g., Op. Att'y Gen. Nos. 2001-352; 2001-069; 96-013; 92-205. It has been suggested that "perhaps the most obvious case of such intertwining occurs when a private entity receives public funds for the general support of activities that are closely aligned with those of government." The Arkansas Freedom of Information Act, supra at 43, citing Rehab Hospital Services, Corp. v. Delta-Hills Health SystemsAgency, Inc., 285 Ark. 397, 687 S.W.2d 840 (1985) (assistance of private body in reviewing proposed changes in the state's health care delivery system). See also Ops. Att'y Gen. Nos. 2000-039 and 95-273, supra, and 90-236 (911 Communications Center supported by public funds), 89-372 (administrative body for a regional hazardous materials response team), 89-082 (nonprofit organization that assists local law enforcement in emergency situations).
When the foregoing principles are applied to the situation you have described, it becomes clear that in order to determine whether the Tomato Cooperative's records are subject to the disclosure requirements of the Freedom of Information Act, it will be necessary to evaluate the sources of the Cooperative's funding, as well as the nature of its activities. Such an evaluation is thoroughly factual, and because I am not authorized to conduct factual inquiries, I am unable to draw any definitive conclusions concerning the applicability of the Freedom of Information Act to the Cooperative.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General