Mr. Jeff C. Harper Springdale City Attorney 201 North Spring Street Post Office Box 1208 Springdale, Arkansas 72765
Dear Mr. Harper:
I am writing in response to your request, pursuant to A.C.A. §25-19-105(c)(3)(B), for an opinion on whether the Mayor of Springdale's decision to withhold an investigative report prepared by a private law firm concerning allegations made against the chief of police is consistent with the Arkansas Freedom of Information Act ("FOIA"). See
A.C.A. §§ 25-19-101 to -109 (Repl. 2002, and Supp. 2003, as amended by Acts 259, 1994 and 2003 of 2005). Specifically, you recite the following facts:
 After several emails were sent anonymously to various sources, including media outlets, the City of Springdale through action by the Springdale City council, authorized an internal investigation to be conducted concerning allegations made against the Police Chief in the emails. The sum of $10,000 was authorized as payment for the investigation, and the City then retained the law firm of Matthews, Campbell, Rhoads, McClure, Thompson and Fryauf to conduct the investigation.
 The Police Chief resigned his position on July 12, 2005 before we received the investigation report. The firm completed their investigation and delivered the report to the City of Springdale late in the day on July 13, 2005. On July 13, 2005, the Arkansas Democrat-Gazette filed a request with the Mayor of Springdale, Jerre Van Hoose, requesting the investigation report. . . . The Mayor, acting on my advice that the internal investigation did not result in any termination or suspension, has told the Arkansas Democrat-Gazette that the investigative report would not be released.
You seek my opinion as to "whether the Mayor's decision not to release the investigative report is consistent with the Arkansas Freedom of Information Act."
RESPONSE
It is my opinion that the Mayor's decision is consistent with the FOIA. The report, even though prepared by a private law firm under contract with the City, falls within the definition of an "employee evaluation or job performance record." Under the FOIA, such records are not subject to disclosure absent a final administrative resolution of a suspension or termination proceeding. Resignation is not a triggering event for the release of employee evaluation or job performance records. Under the FOIA, however, employees have access to their own evaluation and job performance records and may, if they so choose, make them public.
The questions presented by your request are whether the report constitutes an "employee evaluation or job performance record" under A.C.A. § 25-19-105(c)(1) and if so, whether the document is properly withheld from public disclosure under the applicable test for release of such records.
This office has consistently taken the position that any records that were created at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. See, e.g., Ops. Att'y Gen. Nos.2005-030; 2004-260; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; 93-055.
Under the facts you have recited, the report was created at the behest of the "City of Springdale, through action of the Springdale City Council. . . ." There is some information that the city council took this action in furtherance of a recommendation by the Mayor.[1] It is accurate to say, in this instance, therefore, that the report was created "at the behest" of the employer. See e.g., Op. Att'y Gen. 2002-206
(detailing the extent of the supervisory power of the mayor and city council over the chief of police) and Op. Att'y Gen. 2005-030 (report created by ad hoc committee at the request of Bentonville Advertising and Promotion Commission to gather information concerning job actions of its President was generated at the request of the Commission and was an employee evaluation or job performance record).
In addition, the report at issue details the performance or lack of performance of the Chief with regard to a specific incident or incidents. I have stated previously that records created by or at the behest of the employer in connection with the investigation of an employee constitute "employee evaluation/job performance records" within the meaning of the FOIA. See e.g., Ops. Att'y Gen. 2003-381; 2003-364; 2003-201; 2002-085; 2002-055; 2001-276; 2001-217; 2001-153; 2001-144. In my opinion, therefore, the report constitutes a "job performance record" for purposes of the FOIA.
The fact that the report was created by a private law firm at the request of the employer does not impact its classification as a "job performance record." Certainly, action taken by a private entity through a contract with a city, for compensation and to perform a task that the city would otherwise itself perform, makes the FOIA applicable to the private entity's work on that project. See Edmark v. City of Fayetteville,304 Ark. 179, 801 S.W.2d 275 (1990). As part and parcel of the applicability of the FOIA, however, comes the applicability of the pertinent exemptions from disclosure set out in the Act, including the exemption for "employee evaluation and job performance records." Cf., Bryant v. Mars,309 Ark. 480, 830 S.W.2d 869 (1992) (documents prepared by outside consultants were confidential under the "working papers" exemption andEdmark was distinguishable on the basis that there was "no statutory exemption" applicable in that case). See also, Op. Att'y Gen.2001-172 (stating that "[i]f an entity is the "functional equivalent" of a public entity to which it provides services, it follows, in my opinion that . . . the exemptions that are applicable to the public entity should be applicable to the entity providing the services"). Id. at 2.
Once it is determined that the record in question is in fact a job performance record for purposes of the FOIA, the applicable test for disclosure of such records must be reviewed. In this regard, subsection (c)(1) of A.C.A. § 25-19-105 provides as follows:
 (c)(1) Notwithstanding subdivision (b)(12) of this section, all employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure.
A.C.A. § 25-19-105(c)(1).
According to recognized commentators on the FOIA, this exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. Watkins and Peltz, The ArkansasFreedom of Information Act (mm Press, 4th ed. 2004) at 196. As stated by Professors Watkins and Peltz:
 The exemption for evaluation records reflects the public interest in maintaining an effective public employee evaluation system as well as the privacy interests of employees. Without an exemption for such records, supervisory personnel who perform the evaluations may not be candid in assessing employee performance. Also, routine disclosure of the records could undermine one important objective of the evaluation process identification of weaknesses with an eye toward fostering improvement by revealing an employee's deficiencies before he has an opportunity to correct them. The evaluation exemption serves the same purpose as the exemption in Section 25-19-106 of the FOIA that permits a governing body to hold a closed meeting to discuss personnel matters, a provision that dates to the act's passage in 1967.
Id. at 196.
Under the applicable test set out in A.C.A. § 25-19-105(c)(1), suspension or termination is a prerequisite for the release of employee evaluation or job performance records. See e.g., Ops. Att'y Gen. 2005-030; 2001-246; 2000-224; 98-210; 98-188; 97-176; and 97-063. The information you have provided indicates that the Springdale Chief of Police resigned his employment on July 12. Resignation is not a triggering event for the release of job performance records. See e.g., Ops. Att'y Gen. 2005-030; 2004-219; 2001-184; 99-026 and 97-079. As I recently stated in Op. Att'y Gen. 2004-219 "[t]his office has previously opined on numerous occasions that this should be the result even if the employee voluntarily resigned in the face of a disciplinary challenge. See, e.g., Ark. Ops. Att'y Gen. Nos. 2002-235; 2001-246; 98-188; 97-063." Id. at 3. In the same opinion, however, I noted a statement by one of my predecessors to the effect that: "a resignation tendered in the face of a more certain, impending termination could be deemed to be a forced, coerced or constructive termination for purposes of A.C.A § 25-19-105(c)(1)." Id. citing Op. Att'y Gen. No. 97-063. You have not presented any facts indicating this to be the case, however.
As a consequence, it is my opinion that the Mayor's determination is consistent with the FOIA. I will note, however, that under A.C.A. §25-19-105(c)(2) "[a]ny personnel or evaluation records exempt from disclosure . . . shall nonetheless be made available to the person about whom the records are maintained or to that person's designated representative." The employee in question retains the discretion to publicize his own employee evaluation or job performance records even if otherwise shielded from public inspection. See e.g., Ops. Att'y Gen.2001-123 and 96-257.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] See Charlie Morasch "Springdale: "Retiring as chief of police,Reiff says, Inquiry took toll, he tells aldermen," Arkansas Democrat-Gazette, Northwest Arkansas Edition, July 8, 2005.