The Honorable Shirley Borhauer State Representative 23 Kenilworth Drive Bella Vista, Arkansas 72714-4528
Dear Representative Borhauer:
I am writing in response to your request, on behalf of a constituent, for an opinion on whether a particular private entity is subject to the Arkansas Freedom of Information Act ("FOIA"). See A.C.A. §§ 25-19-101 to -109 (Repl. 2002 and Supp. 2005). Specifically, you have enclosed correspondence with your request describing the "Architectural Control Committee" in Bella Vista, which your constituent indicates was appointed by Cooper Communities in connection with the regulation of sewage systems in Bella Vista. The correspondence states that: "[w]hen Bella Vista was started around 1965, Cooper Communities wanted to assume some duties of the Arkansas Department of Health (ADH) such as portions of the septic system inspections and regulations." Your constituent also notes that "[t]he ADH delegated those responsibilities to Cooper Communities." Evidently your constituent made an FOIA request for "a report on the total number of steel septic tanks in Bella Vista Village and the total number of steel septic tanks that have been replaced. . . ." Your constituent notes that this request was denied by the Architectural Control Committee on the grounds that "[t]he ACC is a private, non-profit incorporation [sic] which does not fall under either The Freedom ofInformation Act, or the State Open Records Law." The question posed is "whether . . . the ACC is in violation of the FOIA by not providing the requested information on septic tanks."
RESPONSE
The Freedom of Information Act ("FOIA") contains the following pertinent definition:
 (5)(A) "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance of lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103 (Supp. 2003) (emphasis added).
The Freedom of Information Act further provides that public records will be available to the public for copying and inspection, A.C.A. §25-19-105(a)(1)(A) (Supp. 2003), and that public meetings will be open to the public, A.C.A. § 25-19-106 (Supp. 2003).
In Op. Att'y Gen. 2002-274, my predecessor had occasion to set forth the standard for analyzing the issue of whether a private entity's records are "public records," subject to the Freedom of Information Act. He stated:
 The FOIA applies to all governmental entities within the state. A.C.A. §§ 25-19-103 (Supp. 2001) and 25-19-106(a) (Supp. 2001). It also applies to "any other agency wholly or partially supported by public funds or expending public funds." A.C.A. § 25-19-103(1) (Supp. 2001). This language reveals that private, nongovernmental entities can be subject to the FOIA. See also generally Opinion No. 2001-069.
 The mere receipt of public funds is not, however, alone sufficient to bring a private organization within the reach of the FOIA. The question is whether the private entity carries on "public business" or is otherwise intertwined with the activities of government. City of Fayetteville v. Edmark, 304 Ark. 179, 801 S.W.2d 275 (1990) (private attorneys retained by city); Ops. Att'y Gen. Nos. 2000-039 (private non-profit corporation licensed by the Department of Human Services to provide services for the developmentally disabled), 95-273 (private non-profit agency on aging designated to provide services to older Arkansans under a federal grant program) and 90-243 (non-profit organizations that receive grants from cities or counties under A.C.A. §§ 14-173-101 to -105 to promote economic development). The court in Edmark, supra, in considering whether the files of private attorneys retained by a city were public records, determined that the FOIA should apply when the government "seeks to conduct its affairs through private entities," for in that situation "it seems clear that those entities are for all practical purposes the government itself." 304 Ark. at 187, quoting J. Watkins, Access to Public Records Under the Arkansas Freedom of Information Act, 37 Ark. L. Rev. 741, 764 (1984).
Id. at 2-3, quoting Op. Att'y Gen. No. 2001-352.
In addition, Professors Watkins and Peltz, recognized commentators on the FOIA, have summarized the test that applies to private organizations as follows:
 [T]he FOIA applies only to private organizations that (1) receive public funds, (2) engage in activities that are of public concern, and (3) carry on work that is intertwined with that of government bodies. This approach is sound. If the mere receipt of public funds were enough to trigger the act, it would reach anyone who received government largesse, including welfare recipients and private hospitals that receive Medicare and Medicaid payments. As the Supreme Court has recognized, however, the FOIA should apply when the government "seeks to conduct its affairs through private entities," for in that situation "the entities are for all practical purposes the government itself." Or, as the Attorney General has put it, the FOIA covers a publicly funded organization that enjoys a "symbiotic relationship" with the state or its political subdivisions: "[w]hen the activities of a private organization and the government become intertwined, the private organization may well render itself part of the State for [FOIA] purposes."
J. Watkins and R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT, at 50-51 (4th ed. 2004) (footnotes omitted) (quoting Edmark, 304 Ark. at 187
and Ark. Op. Att'y Gen. No. 1983-163).
You constituent notes that the Arkansas Department of Health (now called the Arkansas "Division of Health")[1] "delegated" certain responsibilities to Cooper Communities in the area of septic tank regulation and indicates that these responsibilities are being exercised by the Architectural Control Committee. I assume that these duties were delegated or are currently being exercised pursuant to either A.C.A. §14-236-107(b)(5) or A.C.A. § 14-236-109 (Repl. 1998 and Supp. 2005). These provisions are found in the "Arkansas Sewage Disposal Systems Act," which empowers the "Division of Sanitarian Services" of the Department to promulgate rules and regulations concerning the location, design, construction, installation and operation of "individual sewage disposal systems." A.C.A. § 14-236-107(b)(1). Subsection (b)(5) of A.C.A. §14-236-107 authorizes the Division of Sanitarian Services to "[d]elegate, at its discretion, to any municipality or, in the case of anunincorporated subdivision, the property owners association, any of its authority under this chapter in the administration of the rules and regulations adopted pursuant to this chapter." (Emphasis added).
In a similar vein, A.C.A § 14-236-109 provides as follows:
 Property owners' associations that construct and maintain or have constructed and maintained sewage disposal facilities in accordance with the standards and regulations established by the Division of Sanitarian Services of the Department of Health or the Arkansas Department of Environmental Quality shall have jurisdiction over the disposal of sewage within and for the subdivided area over which their authority extends and shall have general supervision and authority over the location, design, construction, installation, and operation of individual and community sewage disposal systems to the extent that the general supervision and authority is consistent with this chapter and the rules and regulations promulgated thereunder.
This provision gives property owners' associations that have constructed sewage disposal facilities jurisdiction over sewage disposal in their subdivided area, including authority over "individual sewage disposal systems."
Clearly, therefore, the Architectural Control Committee (if it is indeed exercising such power under one of these statutes), is to this extent performing a governmental function of public concern that is "intertwined" with government. The remaining part of the test for determining whether a private entity is subject to the FOIA is whether the entity receives public funding. Your constituent has not indicated what if any, public funding flows to the Committee in the exercise of its powers. I will note in this regard that the "Arkansas Sewage Disposal Systems Act" referred to above, notes at A.C.A. § 14-236-102(a)(4) in discussing its findings, policies and intent that:
 In densely developed subdivisions located outside incorporated areas, property owners associations have been formed for the purpose of constructing and maintaining community sewage systems and that authorization from the state granting jurisdiction over nonincorporated community sewage systems is desirable to insure that the property owners associations shall qualify for state and federal assistance. . . .
(Emphasis added).
I am not aware whether the property owners association in question or the Architectural Control Committee in fact receives any public funding for purposes of the FOIA. This is an issue of fact that I am not authorized to determine in an official Attorney General opinion.
As I recently stated in Op. Att'y. Gen. 2005-187:
 The FOIA defines "public records" as those "which constitute a record of the performance or lack of performance of official functions which are or should be carried out by . . . a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds." In this regard, the act applies to all governmental entities, whether they are "wholly or partially supported by public funds or expending public funds" or not. Cf. Op. Att'y Gen. 1995-128.
Id. at 4.
The test for applicability of the FOIA to private entities, on the other hand, as it has been articulated by the Arkansas courts, to date, requires the receipt of direct public funding. See e.g., Ops. Att'y. Gen. 2003-064; 1997-148; 1996-297 (fn 1); 1996-196; 1995-077 andSebastian County Chapter of the American Red Cross v. Weatherford,311 Ark. 656, 846 S.W.2d 641 (1993). Again, I cannot determine from the factual information provided whether this element of the existing court test has been met. If there is no direct public funding of this private entity in connection with the exercise of this statutorily delegated governmental function, application of the existing test would lead to inapplicability of the FOIA. In my opinion, this result would be an anomaly and legislative or judicial clarification with regard to the application of the FOIA in connection with this delegation of authority may be warranted. If, on the other hand, the private entity is in receipt of any direct public funding supporting this activity, in my opinion it must comply with the Arkansas Freedom of Information Act.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] See Act 1954 of 2005, merging the Arkansas Department of Health and the Arkansas Department of Human Services into the "Department of Heath and Human Services."